THE FRICK COMPANY v. THE WESTERN STAR MILL-
ING COMPANY.

1. MORTGAGED CHATTEL.—*Valid Sale.* A mortgagor of a chattel may
make a valid sale of the mortgaged property with the mortgagee's
oral consent. In such a case, a sale by the mortgagor passes the
title to a purchaser in good faith.

2. —— *Competent Evidence.* In an action concerning the sale of
mortgaged personal property by the mortgagor, it is competent to
introduce evidence, after a mortgage has been executed and deliv-
ered, that the mortgagee orally authorized the mortgagor to make
sales of the mortgaged property. Such evidence does not contra-
dict or vary the terms of the written mortgage with reference to the
disposition of the property, but tends to show that, after the mort-
gage was delivered, the mortgagor had authority from the mortgagee
to act as agent in making sales of the mortgaged property.

*Error from Saline District Court.*

THIS was an action brought by the *Frick Company* against
the *Western Star Milling Company* for the conversion, in Sep-
tember and October, 1888, of 570 bushels of wheat, valued
at $500, which the Frick Company claimed under a chattel
mortgage dated the 9th of November, 1887, and executed to
the Frick Company by Andrew Bachofer. The chattel mort-
gage embraced the two-thirds interest of 77 acres of grow-
ing wheat on the farm of S. P. Rinquest, in the county of Sa-
line, in this state, which Bachofer had rented. The mortgage
contained the following provision: "The wheat is to be placed
in garner, subject to the order of Frick Company, of Waynes-
boro, Pa., and not to be disposed of without their consent,
unless the past-due notes are first paid in full." Trial before
the court, a jury having been waived. The court made the
following findings of fact:

"1. Immediately after the execution of the chattel mort-
gage described in the plaintiff's petition in the above-entitled
action, it was agreed by and between the mortgagor, Andrew
Bachofer, and the agent of the mortgagee, with whom the
said mortgage was executed for the company, that the mort-
gagor should sell the wheat described in the mortgage at the

place where he could do so at the best advantage, and from the proceeds of such sale he should pay the expenses of harvesting and threshing said wheat, and use what was necessary for the support of his family to the time of such sale.

"2. Said mortgagor harvested said wheat and threshed the same during the month of August, 1888, and put the same in a bin upon the place where the wheat was raised, with the one-third of the crop which belonged to the owner of the land upon which it was raised, said wheat having been raised upon rented land.

"3. On or about the 1st day of August, 1888, the mortgagees sent said mortgage and the notes therein described to Garver & Bond, attorneys at law, located in the city of Salina, Saline county, Kansas, for collection.

"4. Upon the day said wheat was threshed, Garver & Bond sent one James Chase to the place where said wheat was so being threshed to look after the same; and said mortgagor then stated to Mr. Chase that he would turn over to the mortgagees said wheat or pay the debt thereby secured in a short time.

"5. Within a few days after said wheat was threshed, the mortgagor called at the office of Garver & Bond, and Mr. Garver then stated to him that he thought said wheat had better be stored for a while, for the reason that the price, he thought, would be greater than it was at that time; but said mortgagor did not understand the statement so made to him.

"6. During the months of September and October, 1888, the said mortgagor sold to said defendant 434 bushels of wheat, then of the value of $384.

"7. The wheat so purchased by defendant was immediately mixed with a large quantity of other wheat in its elevator, and soon after such sale said plaintiff demanded of defendant said wheat or the value thereof, and defendant refused to pay for said wheat, or to turn the same over to plaintiff."

And thereon the court made the following conclusions of law:

"1. That the plaintiff is not entitled to recover of defendant the value of the wheat so purchased by it.

"2. That the defendant should recover of and from the plaintiff its costs expended in this action."

Judgment was entered for the milling company against the Frick Company. It excepted, and brings the case here.

*Garver & Bond*, for plaintiff in error:

The court should have sustained the objection made to the introduction of testimony as to conversations which took place at the time the mortgage was executed, because it tended to contradict the written agreement at that time entered into by the parties. This testimony was fully and specifically objected to by plaintiff, on the ground that it was attempting by oral evidence to contradict the written instrument. That such testimony was inadmissible, for the reasons stated in the objection made to its introduction, we think is beyond any question or controversy in this court. *Miller v. Edgerton*, 38 Kas. 36; *Topeka Mfg. Co. v. Hale*, 39 id. 23; *Schoen v. Sunderland*, 39 id. 758; *Windmill Co. v. Piercy*, 41 id. 763; *Smith v. Deere*, 48 id. 416.

No question can be made that this mortgage held the wheat after it was threshed and placed in the granary, and that the mortgagee could follow it into the hands of a purchaser. *Sims v. Mead*, 29 Kas. 124; *Muse v. Lehman*, 30 id. 514.

The receipt of the wheat and the mixing of it with a large quantity of other wheat in its elevator was a conversion by the defendant, and the plaintiff was entitled to recover its value. *Shepard v. Pratt*, 16 Kas. 209; *Sims v. Mead*, 29 id. 129; 16 id. 43; 13 N. H. 494; 9 Allen, 171.

The conditions of the mortgage not being complied with, if the lien had not been waived or released by the mortgagee, the wheat passed into the hands of the milling company subject to such lien, and the mortgagee could maintain this action for the value of the wheat so received and converted. *Brown v. Campbell*, 44 Kas. 237; *Howard v. Burns*, 44 id. 543.

*C. A. Hiller*, and *Hutchinson & Banks*, for defendant in error:

Oral evidence is admissible to prove a new and distinct agreement to change a written agreement. Greenl. Ev., 12th ed., § 303; Abbott's Trial Ev., p. 370; *Piatt's Adm'r v. United States*, 22 Wall. 506, and cases cited; *Shaffer v. McKanna*, 24

Kas. 22; *Armel v. Layton*, 29 id. 576; 125 Pa. St. 268; 147 Mass. 46; 45 Wis. 36.

A general objection to evidence is insufficient. *Humphrey v. Collins*, 23 Kas. 549; *K. P. Rly. Co. v. Pointer*, 9 id. 620; *Beebe v. Bull*, 12 Wend. 504.

Exceptions to testimony *en masse* are unavailing. If a party excepts to the entire testimony of a witness, without specifying the portions that are inadmissible, the exceptions are not reviewable in this court. *Beebe v. Bull*, 12 Wend. 504; *Penn. Aid Society v. Corlay*, 11 Ins. Law J. 493; *Walker v. Armstrong*, 2 Kas. 198; *K. P. Rly. Co. v. Pointer*, 9 id. 620; *Gano v. Wells*, 36 id. 688; *Smythe v. Parsons*, 37 id. 83.

The same rule should obtain to general objections and exceptions to evidence as to general exceptions to instructions. *Fullenwider v. Ewing*, 25 Kas. 69; *Myer v. Moon*, 45 id. 580.

It is incumbent upon the plaintiff to prove a demand and refusal in order to sustain this action against the defendant. Cooley, Torts, pp. 452–454; *Farrer v. Rollins*, 37 Vt. 295; Neill, Torts, 592.

There can be no conversion of property while in possession of a party who came rightfully by it, without the exercise of such a claim of right or dominion over it as assumes a right to hold the possession, so as to deprive the other party of it, for in such a case it is the unlawful detention that constitutes the conversion. *Fernald v. Chase*, 37 Me. 289; *Boobier v. Boobier*, 39 id. 406; *Shoemaker v. Simpson*, 16 Kas. 43. In the case at bar no conversion was shown to exist in law, and none was shown by the evidence.

The mixture of this wheat with the wheat of the defendant, although not capable of an actual separation, does not militate against this position. *Piazzek v. White*, 23 Kas. 621; *Muse v. Lehman*, 30 id. 514–518; *Ryder v. Hathaway*, 38 Mass. 298, or 21 Pick. 298.

Where a parol license is given, on the faith of which money is expended upon it by the licensee, the licensor will be estopped from revoking the license. *Lane v. Miller*, 27 Ind.

265; *Ogle v. Ogle,* 55 id. 130; *Buchanan v. L. C. & S. W. Rld. Co.,* 71 id. 265; *Nowlan v. Whipple,* 79 id. 481; *Williams v. Floyd,* 63 Mich. 487; *Cummings v. Smith,* 3 Metc. 486; *Wilson v. Chalfant,* 15 Ohio, 243; *Piatt's Adm'r v. United States,* 22 Wall. 496.

The opinion of the court was delivered by

HORTON, C. J.: This was an action in the court below to recover damages for the conversion of a certain quantity of wheat, upon which the Frick Company held a mortgage from Andrew Bachofer. The mortgage was dated November 9, 1887, and covered Bachofer's two-thirds interest in 77 acres of growing wheat in Saline county, to secure the payment of an indebtedness from Bachofer to the company. The mortgage was filed for record on November 12, 1887. In August, 1888, the wheat was threshed, and in September and October following Bachofer sold and delivered 434 bushels to the Western Star Milling Company. The wheat was of the value of $384. On demand, the milling company refused to account to the Frick Company for the wheat or any part of it. It appears from the evidence and findings of fact that the milling company bought the wheat of Bachofer, paid for it, and immediately mixed the same with other wheat of the company in its elevator at Salina. The contention of the Frick Company is, that the sale of the wheat by Bachofer to the milling company was contrary to the provisions of the chattel mortgage and without the knowledge or consent of the Frick Company.

If, after the mortgage to the Frick Company was made, that company orally authorized Bachofer, the mortgagor, to sell the wheat, a sale of the latter would convey a good title to the purchaser, the milling company. Whether the Frick Company gave Bachofer, the mortgagor, authority to sell the wheat described in the mortgage, was a question of fact for the trial court; and there was competent evidence in the case which would justify the findings of this fact in favor of the milling company. The authorities are to the effect that a mortgagor may make a valid sale of the mortgaged property

with the mortgagee's oral consent. (Jones, Chat. Mortg., § 456; *Pratt v. Maynard*, 116 Mass. 388; *Brandt v. Daniels*, 45 Ill. 453.) In *Frankhouser v. Ellett*, 22 Kas. 127, BREWER, J., speaking for the court, said:

"We think the rule to be, that where a mortgage is given upon a stock of goods, and by agreement outside the mortgage the mortgagor is permitted to continue the business and dispose of the goods in the ordinary way, and use some portion of the proceeds in the support of his family, the transaction will be upheld or condemned according as it is entered into and carried out in good faith, or not. The mortgagor, if he may keep the possession, may as well make the sales as a stranger. He acts in that respect as a *quasi* agent at least of the mortgagee."

The claim that the court should have sustained the objection to the introduction of the evidence with reference to the disposition of the wheat at the time the mortgage was executed is not tenable, because it clearly appears that the evidence relied upon by the trial court concerned the statements of the parties after the mortgage was executed. This oral evidence was not received to contradict the written mortgage, but to establish the authority of Bachofer from the Frick Company to sell the wheat. The other claim, that the oral authority from the Frick Company to Bachofer to sell the wheat was revoked prior to the purchase by the milling company, is founded upon conflicting evidence. The trial court settled this question of fact in favor of the milling company. When James Chase, as agent for the Frick Company, went where the wheat was being threshed to look after it, he should have taken possession thereof, or made complete arrangements to have the wheat stored for his company. He should not have accepted the statement of Bachofer, the mortgagor, if he desired to protect his company, that he would turn over the wheat or pay the debt in a short time.

The judgment of the district court will be affirmed.

All the Justices concurring.