JOHN B. REESE *et al.*, *a Partnership, etc., Appellants,*
v. SAMUEL KAPP, *Appellee.*

No. 16,483.

### SYLLABUS BY THE COURT.

SALES—*Mortgagor of Chattels—Oral Consent of Mortgagee—
Legality.* A mortgagor of chattels may, with the oral con-
sent of the mortgagee, make a valid sale of the mortgaged
property and convey a good title thereto to a purchaser in
good faith, notwithstanding the provisions of chapter 105 of
the Laws of 1901 (Gen. Stat. 1909, § 5239), making it a mis-
demeanor to sell or dispose of mortgaged property without
the written consent of the mortgagee.

Appeal from Leavenworth district court; ELI NIRD-
LINGER, judge *pro tem.* Reversed.

*W. B. Brownell,* and *Arthur M. Jackson,* for the
appellants.

*W. W. Hooper,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: This action was to recover the pur-
chase money due on a sale of cattle. A counterclaim
for damages was interposed by reason of a mortgage
on the property. Judgment was given for the defend-
ant, and the plaintiffs, Reese & Son, appeal.

At the time of the sale there was a mortgage out-
standing on the cattle, held by a commission firm at
Kansas City. When the purchase was made a check
for $1000 was given by the purchaser, and two days
later, when the cattle were shipped, a check for the
balance, $5450, was given. Both checks were drawn
on the Linwood State Bank. The cattle were shipped
from Fall Leaf, Kan., and were consigned to a firm in
St. Louis, Mo., for feed at Kansas City, on account of
Cole & Ott, under an arrangement by which the cattle
might be sold at Kansas City by Cole & Ott with the

permission of the defendant.  On arrival at Kansas City the cattle were placed in the pens of Cole & Ott at the stockyards to be fed and watered.  About the same time a member of the plaintiffs' firm presented the 1000-dollar check at the bank in Linwood.  Previous to shipping the cattle the defendant had drawn a sight draft in favor of the bank on Cole & Ott for $1000, with which to meet this check, and it appears that he intended to provide for the payment of the other check out of the proceeds of the sale of the cattle; but when the first check was presented he did not have sufficient funds in the bank, and the cashier telephoned to Cole & Ott, inquiring whether the sight draft would be paid.  At the request of Cole & Ott the defendant, who was then in their office, answered directing the bank to refuse payment of the checks.  The reason given by the defendant at the trial for this order was that he had just been informed of the existence of the mortgage and that he had then stated that he would have nothing more to do with the cattle.  The plaintiffs, however, testified that the defendant told them that his reason was that parties who were going in with him would not pay up their share of the money.  The mortgagee was immediately notified of the refusal of the bank to pay the 1000-dollar check, and calling up the cashier learned that the 5450-dollar check, which the plaintiffs were about to use to satisfy the mortgage, would not be paid.  Thereupon the mortgagee notified Cole & Ott of its mortgage.  The defendant then refused to have anything more to do with the cattle, and they were sold by Cole & Ott upon the market with the consent of the mortgagee, the defendant saying that he was done with them.  An account of the sale was made by Cole & Ott, reciting that the sale was for account of Samuel Kapp.  The proceeds were paid over to the mortgagee, and after deducting the mortgage indebtedness the balance was paid to the plain-

tiffs, who gave the defendant credit for the net pro-
ceeds, leaving a balance due to them on the cattle, for
which amount this suit was brought.

The plaintiffs' evidence tended to show that the de-
fendant had been informed of the mortgage before the
cattle were shipped and that one of the plaintiffs would
take the larger check to Kansas City to use in paying
it off.   The evidence showed that the mortgagee had
given oral permission for the sale of the cattle, but the
case was submitted to the jury upon the theory that
such oral consent was ineffectual, and upon the re-
quest of the defendant, and over the objections of the
plaintiffs, the jury were instructed that if the cattle
were sold by the plaintiffs to the defendant without the
written consent of the mortgagee the defendant had
the right to stop the payment of the checks; and that
if the mortgagee, after satisfying the mortgage, paid
over the balance of the money remaining from the pro-
ceeds of the sale by Cole & Ott, without reference to
the rights of Samuel Kapp, the plaintiffs should be held
to have accepted the abandonment of the purchase by
the defendant.   This instruction was equivalent to a
direction to find for the defendant, as there was no
claim that any consent in writing had been given and
it was not denied that the plaintiffs had received the
proceeds.   Just what was meant by the expression
"without reference to any rights of Samuel Kapp" is
not clear, but the statement of the effect of a sale with-
out the written consent of the mortgagee is explicit.
The defendant contends that he had the right to re-
scind the purchase and abandon the cattle at once upon
being notified of the mortgage, notwithstanding any
oral permission for the sale that may have been given
by the mortgagee, and that the instruction was there-
fore correct.   This is contrary to the views of this court
in *Frick Co. v. Milling Co.*, 51 Kan. 370.   It is insisted,
however, that chapter 105 of the Laws of 1901 (Gen.

Stat. 1909, § 5239) makes the consent in writing indispensable. This statute provides that it shall be unlawful to sell mortgaged property without the written consent of the mortgagee, and provides a penalty for its violation, but does not affect the question here presented.

A sale of mortgaged property by the mortgagor with the oral consent of the mortgagee will convey the title as against the latter, notwithstanding the statute. (*Randol v. Buchanan,* 61 Mo. App. 445; *Chase v. Willard,* 67 N. H. 369; *Anderson v. Brewing Co.,* 173 Ill. 213; *White Mountain Bank v. West and Patten & Hamlin, Trustees,* 46 Maine, 15; Jones Chat. Mort., 5th ed., §§ 456, 457; 2 Cobbey Chat. Mort. § 637.) If the plaintiffs had the oral permission of the mortgagee to sell the cattle, as the evidence shows, the defendant obtained a good title by his purchase; and if he stopped the payment of the check, which would otherwise have been used to satisfy the mortgage, he can not justly complain of its existence.

The evidence shows that the cattle were sold in Kansas City upon a falling market. The defendant alleged that a higher price could have been obtained in St. Louis, and was allowed under his counterclaim to give evidence of the state of the market in that city, and upon this evidence damages were awarded in favor of the defendant. It is insisted that evidence of market values in St. Louis is immaterial, as the defendant claims to have rescinded the purchase. This question is not fully discussed in the briefs, and may not arise on another trial.

The judgment is reversed and the cause remanded, with directions to grant a new trial.