JOHN E. WILSON v. JOHN GEISS.
FIRST STATE BANK OF LE SUEUR CENTER, ETC.,
GARNISHEES.
MINNESOTA SUGAR COMPANY AND OTHERS,
INTERVENERS.[1]

October 6, 1922.

No. 22,982.

**Chattel mortgage—lien not discharged as to creditor attaching proceeds of sale.**

1. The lien of a chattel mortgage is not discharged as to a creditor of the mortgagor attaching the proceeds of the sale of the mortgaged property in the hands of a third person who received the same pursuant to an agreement between the mortgagor and mortgagee that the property should be sold and the money collected by such third person and applied on the mortgage debt.

**Mortgagee not estoppel from claiming proceeds of sale.**

2. When a mortgage has been properly filed, the mortgagee is not estopped as against an attaching creditor of the mortgagor from claiming the proceeds of such sale because he did not disclose the agreement with the mortgagor.

**Reformation of mortgage cannot be questioned by attaching creditor.**

3. A mortgage, intended by the mortgagor to secure the payment of the claims of certain of his creditors, ran to a bank representing the creditors. In a garnishment proceeding against the bank, the court directed that the mortgage be reformed by substituting the names of the creditors as mortgagees. Plaintiff cannot question the reformation. He could not assume to represent his debtor, since they were not in privity with but antagonistic to each other. The facts justified a reformation if one was necessary to enable the creditors to assert their rights under the mortgage.

**Mortgage not voidable merely because certain creditors secured a preference.**

4. Plaintiff could not avoid the mortgage merely because it gave

[1]Reported in 190 N. W. 61.

the creditors it secured a preference over other creditors. He could do so only in aid of bankruptcy or insolvency proceedings.

**Findings sustained by evidence.**
 5. The findings were supported by the evidence and plaintiff, being denied a recovery, is not in a position to question them for alleged imperfections in form.

Action in the district court for Le Sueur county. Defendant did not appear and judgment was entered by default in favor of plaintiff for $1,840.79. Plaintiff garnished the First State Bank of Le Sueur Center and A. C. Tambornino. They disclosed having funds amounting to $1,411.25. Plaintiff then filed a supplemental complaint and prayed judgment for $1,840.75 against the garnishee Tamborino. The bank answered that it held defendant's chattel mortgage in trust for certain of his creditors, prayed that the court adjudicate the claims of the respective creditors to money in its possession and that upon paying the claimants the amounts to be fixed, the bank be discharged from further liability to any of the interveners. James J. Clifford, Minnesota Sugar Company, and other claimants filed complaints in intervention. The case was tried before Tifft, J., who made findings and conclusions of law as stated in the second and third paragraphs of the opinion. From an order denying his motion to amend the findings and conclusions or for a new trial, plaintiff appealed. Affirmed.

*Kerr & Richardson* and *L. W. Wilson*, for appellant.
*W. C. & W. F. Odell* and *Charles C. Kolars*, for respondents.

LEES, C.
Appeal from an order denying plaintiff's motion for a new trial of the issues between him and the interveners in a garnishment proceeding. Although the findings of fact are attacked on the ground that they are not supported by the evidence, the principal question is whether they justified the conclusions of law.

In substance the findings are that plaintiff is a judgment creditor of the defendant Geiss; that the intervener, the Minnesota Sugar Company, is a creditor to whom he mortgaged some of his

personal property; that the other interveners, except James J. Clifford, are creditors claiming under a chattel mortgage Geiss executed to the garnishee bank. All of the mortgaged property was sold at public auction and the proceeds were in the bank's possession when the garnishment proceeding was instituted. There was a specific finding that before the auction Geiss and the sugar company agreed that the property covered by the company's mortgage should be sold to pay the debt it secured and that the amount realized at the sale should be applied upon the note evidencing the debt. It was found that the sale was had pursuant to such agreement; that Geiss employed the bank to act as clerk at the auction and directed it and A. C. Tambornino, its cashier, to pay to the company all moneys received from the sale of the property so mortgaged; and that a portion of the money in the bank's possession when the garnishee summons was served was proceeds of such sale. The court also found that Geiss was indebted to the other interveners (except Clifford, who was the auctioneer), in amounts aggregating $828.80; that he had advertised his property for sale at auction on November 25, 1919; that these creditors insisted that he should pay or secure the payment of their claims, and on November 18, 1919, he executed in good faith a chattel mortgage running to the garnishee bank as security for the payment thereof, all the parties intending that it should be so written and worded as to secure such payment, but that Tambornino, who drew the mortgage, erroneously named the bank as the mortgagee. There was a finding that the property described in this mortgage was sold at the auction pursuant to an agreement between Geiss and these creditors of the same character as the agreement he had with the sugar company; that the remainder of the money in the garnishee's possession represented the proceeds of the sale of such property, and that when the auction was over Geiss had directed Tambornino, as cashier, to collect for the property sold, pay the expenses of the auction, and then pay the remainder of the money to the interveners pro rata. From our examination of the record we are satisfied that each of these findings is sufficiently supported by the evidence.

The conclusions of law were that the mortgage running to the bank should be reformed by substituting the names of the creditors as mortgagees; that the auctioneer's and clerk's fees be paid, and that the sugar company and the creditors secured by the mortgage to the bank have judgment for the remainder of the money. As to Tambornino, it was ordered that the action be dismissed, and, as to plaintiff, that he recover nothing.

Geiss did not appear at the trial and no pleading was interposed in his behalf. Neither the bank nor Tambornino made a claim to the money in question. The contest was wholly between plaintiff, claiming by virtue of the garnishment proceeding, and the interveners, claiming by virtue of their mortgages and the agreements with Geiss.

1. Plaintiff's first point is that the interveners discharged their mortgages and liens by giving consent to the sale by Geiss and standing by and seeing their property sold. This contention, as well as others, must be considered in the light of the general rule that an attaching creditor acquires no greater rights against the garnishee and occupies no better position than the principal debtor would occupy if he brought suit against the garnishee. Bacon v. Felthous, 103 Minn. 387, 115 N. W. 205; Wunderlich v. Merchants Nat. Bank, 109 Minn. 468, 124 N. W. 223, 27 L. R. A. (N. S.) 811, 134 Am. St. 788, 18 Ann. Cas. 212. An exception to the rule will be referred to later.

As to a purchaser from the mortgagor who sells with the authority of the mortgagee, it has been held that title is acquired free from the lien of the mortgage. Hogan v. Atlantic Elev. Co. 66 Minn. 344, 69 N. W. 1; Partridge v. Minnesota & D. Elev. Co. 75 Minn. 496, 78 N. W. 85. Plaintiff contends that the lien of the mortgage is also discharged as to a creditor of a mortgagor attaching the proceeds of the sale before they reach the mortgagee. Maier v. Freeman, 112 Cal. 8, 44 Pac. 357, 53 Am. St. 151, is cited as authority for this contention. On the other hand, the interveners contend that, if the mortgagor and mortgagee agree that the property shall be sold and the money collected by a third person and applied on the mortgage debt, the mortgagee has a lien upon it and

a right to it superior to the rights of an attaching creditor of the mortgagor; that the legal effect of such an agreement is to make the mortgagor the agent of the mortgagee, and that in law the sale is precisely as if the mortgagee had taken possession and placed a third person in charge as agent to sell the property and account for the proceeds. National Citizens Bank v. Ertz, 83 Minn. 12, 85 N. W. 821, 53 L. R. A. 174, 85 Am. St. 438, is cited in support of this contention. In the same connection, reference is made to Fairweather v. Nelson, 76 Minn. 510, 79 N. W. 506, and Hoyt v. Clemans, 167 Iowa, 330, 149 N. W. 442, L. R. A. 1915C, 166. It is true that Geiss advertised the mortgaged property for sale and engaged the clerk at the auction, but the finding with respect to the agreement under which the mortgagees consented to the sale brings the case within the scope of the principle upon which the interveners rely, and it is controlling as to this feature of the case.

2. Plaintiff suggests that as against him the interveners are estopped from claiming the money, because they did not disclose the agreement with Geiss at the time of the sale. Their mortgages were of record and plaintiff was charged with notice of them. His brother, who was his representative, was present at the sale and had an opportunity to bid. There was no proof that the sale was not fairly conducted or that the property was sold for less than it was worth. We fail to see how plaintiff was prejudiced by interveners' failure to disclose the agreement.

3. Complaint is made of the reformation of the mortgage to the bank. The evidence showed that the parties intended that the mortgage should secure the indebtedness of Geiss to the interveners. He owed nothing to the bank. It represented the interveners. Tambornino prepared a list of the names of the creditors and the amount due each. It is headed: "Bills Bank agreed to pay." He also prepared a written direction to the bank to pay the debts Geiss owed in Le Sueur Center and vicinity out of the money received at the auction, and Geiss signed it. This instrument recited the execution of the mortgage to the bank and contained the statement that it was executed to protect the bank from loss on account of its promise that the creditors should receive the money Geiss owed

them. The recital does not accord with Tambornino's testimony, which was unequivocally to the effect that the mortgage was given as security for the claims of the interveners and that he drew it at their request and the request of Geiss to avoid legal proceedings for the collection of the claims. The evidence fully justified the finding that it was the intention of the parties to secure the payment of these claims. It would seem, therefore, that a reformation was not necessary to enable the interveners to assert their rights under the mortgage. Cremer v. Wimmer, 40 Minn. 511, 42 N. W. 467; Close v. Hodges, 44 Minn. 204, 46 N. W. 335. But, if the interveners could found no claim to the property or the proceeds of the sale thereof upon the mortgage without having it reformed, we see no reason why plaintiff should complain of the reformation. Granting for the argument that Geiss will not be bound by any judgment for reformation, plaintiff is not in a position to take advantage of the fact. He cannot assume to represent his debtor because they are not in privity with but antagonistic to each other. Stanek v. Libera, 73 Minn. 171, 75 N. W. 1124. Finally, if plaintiff did stand in Geiss' shoes, he could not defeat a reformation upon the facts disclosed by the record, for clearly enough the parties mutually intended the mortgage should be so worded that it would secure the interveners' claims, and the scrivener, in attempting to express their intention, named the bank as mortgagee, when, as a matter of law, the interveners should have been named. Wall v. Meilke, 89 Minn. 232, 94 N. W. 688; Teig v. Linster, 150 Minn. 111, 184 N. W. 609; Pomeroy, Eq. Jur. § 845.

4. We cannot sustain the contention that in legal effect the mortgage was an assignment for the benefit of certain of Geiss' creditors, and hence was void as an attempt to delay and defraud other creditors. Under the statute there is an exception to the general rule first stated herein. Section 7870, G. S. 1913, provides that, if the garnishee holds the property attached by a title void as to the defendant's creditors, he may be charged therefor, although the defendant could not have maintained an action against him therefor. Plaintiff could have avoided the mortgage if it had been given to defraud creditors, but upon sufficient evidence the court found

that it was given in good faith. Plaintiff could not avoid it in this proceeding merely because it gave the interveners a preference over other creditors. He could do so only in aid of bankruptcy or insolvency proceedings. Crookston State Bank v. Lee, 124 Minn. 112, 144 N. W. 433; Imperial Elev. Co. v. Bennett, 127 Minn. 256, 149 N. W. 372.

5. The final attack is directed to alleged imperfections in the form of the findings and conclusions, but plaintiff is in no position to question them on this score in view of the holding that he had no right of recovery.

Order affirmed.