(April 28, 1923.)

# BELLEVUE STATE BANK, Respondent, v. HAILEY NATIONAL BANK, Appellant.

[215 Pac. 126.]

CHATTEL MORTGAGES—SALE OF CHATTEL—CONSENT OF MORTGAGEES—
DEPOSIT OF PROCEEDS WITH SECOND MORTGAGEE—WAIVER OF LIEN—
LIEN ON PROCEEDS—APPLICATION ON DEBT—AGREEMENT FOR—
NOTICE OF—DIRECTIONS AS TO APPLICATION.

1. A mortgagee of a chattel, who consents to its sale, does not retain a lien upon the proceeds by virtue of the mortgage.

2. Bank A had a first mortgage, and Bank B a second mortgage, on a chattel of their common debtor C. It was sold with consent of both banks and the proceeds deposited in Bank B. If C agreed with Bank A, in consideration of its consent to the sale, to apply the proceeds on its claim, and Bank B knew of this agreement, it would be liable to Bank A if it applied the proceeds on its own claim.

3. If at the time of the deposit C directed Bank B to apply it in payment of the claim of Bank A, it would be liable for applying it on its own claim in violation of such instruction.

4. Evidence reviewed and *held* insufficient to support the judgment.

APPEAL from the District Court of the Third Judicial District, for Ada County.   Hon. Raymond L. Givens, Judge.

Action for money had and received.   Judgment for plaintiff.   *Reversed.*

Sullivan, Sullivan & Van Winkle, for Appellant.

Both plaintiff and defendant banks waived the lien of their mortgages, and rendered the proceeds of such sale subject to levy by other creditors of the mortgagor. (5 R. C. L., sec. 94; *Maier v. Freeman*, 112 Cal. 8, 53 Am. St.

Publisher's Note.

1. Consent to sale of property by mortgagor after mortgage is given as waiver of lien, see note in 43 L. R. A., N. S., 302.

151, 44 Pac. 357; *Carr v. Brawley,* 34 Okl. 500, 125 Pac. 1131, 43 L. R. A., N. S., 302 and note.)

Where the evidence is insufficient to support the verdict, the judgment or verdict must be reversed. (*Kelly v. Oregon S. L. Ry. Co.,* 4 Ida. 190, 38 Pac. 404; *Commercial Bank v. Lieuallen,* 5 Ida. 47, 46 Pac. 1020; *Work Bros. v. Kinney,* 7 Ida. 460, 63 Pac. 596; *Zienke v. Northern P. R. Co.,* 8 Ida. 54, 66 Pac. 828; *Idaho Mer. Co. v. Kalanquin,* 8 Ida. 101, 66 Pac. 933; *Small v. Harrington,* 10 Ida. 449, 79 Pac. 461; *Wood v. Broderson,* 12 Ida. 190, 85 Pac. 490; *Hibler v. Smith,* 20 Ida. 590, 119 Pac. 41; *Furey v. Taylor,* 22 Ida. 605, 127 Pac. 676; *McDonnell v. Jones,* 25 Ida. 551, 138 Pac. 1123; *Constantine v. McDonald,* 25 Ida. 342, 137 Pac. 531; *State v. Trego,* 25 Ida. 625, 138 Pac. 1124; *Helle-brant v. Kent,* 29 Ida. 89, 157 Pac. 780.)

As the proceeds of the sale of mortgaged property are not impressed with a lien in favor of the mortgagee, he had no right, as against a subsequent mortgagee, to question a payment made by the mortgagor to such subsequent mortagee in satisfaction of the latter's claim. (*Smith v. Crawford County State Bank,* 99 Iowa, 282, 61 N. W. 378, 68 N. W. 690.)

C. S., sec. 6416, establishes a lien in favor of the Hailey National Bank on this deposit for the amount of money due the bank from Brown Brothers, and this is the first and only lien attaching to the proceeds of the sale of the cattle; following this condition C. S., sec. 5954, establishes that, in this case, the note of Brown Brothers held by the Hailey National Bank, being made payable at that bank, was in itself a written order to the bank, to pay the same for the account of Brown Brothers, it became a signed order to the bank to pay the note and charge it to the account of Brown Brothers, which was done.

J. G. Hedrick and Oppenheim & Lampert, for Respondent.

"Where a bank was the holder of a second chattel mortgage and knew of a prior mortgage on such chattels and it consented to a sale of the chattels and received the proceeds,

with knowledge that such proceeds were to be applied in payment of the first mortgage, it received and held such proceeds in trust for the holder of the first mortgage.'' (11 C. J. 633, sec. 347; *Morrison v. Elizy,* 190 Ill. App. 374; *Rock Springs Nat. Bank v. Luman,* 6 Wyo. 123, 42 Pac. 874.)

''One who through design or misdirection of another receives money belonging to a third person cannot retain it to apply on his own debt due from the one who gave it to him.'' (3 Sutherland, Code Practice and Forms, p. 2883, sec. 5043; *White Pine Co. v. Sadler,* 19 Nev. 98, 6 Pac. 941; *Union Stock Yards Nat. Bank v. Gillespie,* 137 U. S. 411, 11 Sup. Ct. 118, 34 L. ed. 724; *People's Nat. Bank v. Myers,* 65 Kan. 122, 69 Pac. 164.)

''The action of general *assumpsit* is an equitable one, being in the nature of a bill in equity, and therefore is subject to the rule of moral obligation which binds the conscience.'' (2 R. C. L. 746, sec. 5; 5 C. J., p. 1380, sec. 4.)

McCARTHY, J.—Respondent brought this action to recover $3,507, the proceeds of a sale of mortgaged property, claimed to have been wrongfully converted by appellant. In March, 1919, Brown Bros., a copartnership, gave respondent a mortgage on 150 head of cattle as security for a $6,000 note. Appellant held a second mortgage on 205 head of Brown Bros.' cattle including the 150 head mortgaged to respondent. In September, 1919, Brown Bros. shipped and sold two carloads of the cattle covered by the mortgages. Both appellant and respondent consented to the sale. Wm. F. Brown, who represented Brown Bros. throughout the transaction, notified respondent of the sale by telegram. The money realized was deposited to Brown Bros.' account in the appellant bank, where they did their general banking business. There is no evidence as to the conditions upon which respondent and appellant consented that the sale might be made. Wm. F. Brown testified that, before he shipped the cattle, Mr. Ensign, appellant's cashier, asked him if he was going to apply the money on the first mort-

gage or any part of it, and that he said "Yes." Brown volunteered the information that he expected the cattle would bring more money than they did. Again, in response to a question as to what directions he gave appellant or any of its officers in regard to the application of the proceeds of the sale, he answered: "The only thing that there was was the day when the cattle were shipped. Mr. Ensign asked me if I was going to apply any of this money on to the mortgage of the Bellevue Bank and I told him I was."

On the second or third of October, after returning from Omaha where the cattle were sold, Wm. F. Brown saw Mr. Ensign. The money had not arrived and the latter said they would wait until it came. The money reached appellant October 3d. In the meantime Wm. Brown had fallen ill with the "flu," and Ensign, upon learning this, said to him: "Well, just let it go then until you get on your feet. You come up as soon as you can." On October 1st, Ensign had a conversation with T. D. Perry, vice-president of respondent. He asked Ensign if he proposed to pay off the balance of respondent's first mortgage, to which Ensign replied that he would not give an answer at that time, but would take the matter up with Will Brown when he returned and they saw how his affairs checked up, but possibly they would want to do it. While Brown was sick, without waiting to hear further from him or from respondent, Ensign applied the money on Brown Bros.' indebtedness to his bank. The indebtedness to respondent on account of the note and first mortgage was $3,433 at the time appellant applied the money to its own claim. The verdict and judgment are for that amount. Ensign, testifying for appellant, denied that he made the above statements attributed to him by Brown and Perry. The jury must have believed that he did. While the evidence is conflicting, there is substantial evidence in the record to establish the facts above outlined. The principal specification of error and the only one which we find it necessary to expressly discuss is that the evidence is insufficient to sustain the verdict and judgment.

By consenting to the sale respondent waived its mortgage lien on the cattle. Having consented to the sale, the mere fact that it had had a mortgage on the cattle did not necessarily imply ownership, part interest in, or a lien upon, the proceeds. (*Durkee v. National Bank,* 102 Fed. 845, 42 C. C. A. 674; *Fairweather v. Nelson,* 76 Minn. 510, 79 N. W. 506; *Maier v. Freeman,* 112 Cal. 8, 53 Am. St. 151, 44 Pac. 357; *Carr v. Brawley,* 34 Okl. 500, 125 Pac. 1131, 43 L. R. A., N. S., 302; *Waters v. Cass County Bank,* 65 Iowa, 234, 21 N. W. 582.)

The complaint alleges in effect an agreement to apply the proceeds in payment of the respondent's first mortgage, known to appellant, and also alleges that Brown Bros. instructed appellant to thus apply them.

In *Rock Springs Nat. Bank v. Luman,* 6 Wyo. 123, 42 Pac. 874, it was held that a bank, which receives a deposit knowing that the money represents the proceeds of the sale of mortgaged chattels, cannot apply the same in payment of a claim which it holds against the mortgagor, and, if it does so, is liable to him. Emphasis is laid on a Wyoming statute providing that the proceeds must be applied to the payment of the mortgage debt. We have no similar statute. In *Morrison v. Elzy,* 190 Ill. App. 374, the court held that, where a bank was the holder of a second chattel mortgage, knew of the prior mortgage, consented to the sale of the chattels, and received the proceeds of the sale, they were held in trust for the holder of the first mortgage. It appeared, however, in that case, that the first mortgagee did not know of the sale nor consent thereto. This would appear to materially distinguish it from a case like the instant one where the first mortgagee did consent. In *People's Nat. Bank v. Myers,* 65 Kan. 122, 69 Pac. 164, the court held that, where mortgaged chattels were sold by the mortgagor, and the proceeds transmitted to a bank which knew of the mortgage, the bank could not apply the proceeds on a debt owing to it by the mortgagor. It does not appear in the statement of facts whether or not the mortgagee consented to the sale. If he did not, it would seem that the

case falls within the principle of *Morrison v. Elzy, supra.* If he did, then the case is an authority in support of respondent's contention. In *Smith v. Crawford County State Bank,* 99 Iowa, 282, 61 N. W. 378, 68 N. W. 690, it is held that, even where the mortgagor agrees to pay a first mortgage with the proceeds of the sale of the mortgaged chattels, a bank in which the proceeds are deposited is not bound by such agreement unless it has knowledge of it. In Idaho-Utah etc. Bank (U. S. District Court for Idaho), decided April 2, 1921, but not reported, it is held that, where the mortgaged chattels were sold with the consent of the mortgagee, and the proceeds deposited in a bank, the latter is not liable to the mortgagee for the proceeds, unless there was an agreement between the mortgagee and the mortgagor that the money should be applied to the payment of the mortgage, and the bank had notice.

We conclude that, if Brown Bros. agreed with respondent, in consideration of its consenting to the sale, to apply the proceeds on its mortgage, and if appellant had notice of such agreement, it would be liable to respondent. The court so instructed the jury. There is absolutely no evidence to show such an agreement. It cannot be inferred merely from the fact that respondent consented to the sale and that William Brown notified it by telegram. Therefore the evidence is insufficient to support the verdict and judgment upon this theory.

We conclude also that, if Brown Bros. directed appellant to apply the proceeds on the first mortgage or hold them subject to their orders, appellant would be liable for refusing to carry out those directions and for applying the money on its own mortgage. The court so instructed the jury. If such were the facts we think that an action based on this ground of liability could be sustained by respondent. Such are not the facts, however. The conversation which Wm. Brown had with Ensign before the cattle were shipped amounted to no more than a rather vague and ambiguous expression of intention. There was never any explicit direction given to apply the money on the first mortgage. The

evidence is therefore insufficient to support the verdict or judgment upon this theory.

There is evidence tending to show that Ensign stated nothing would be done about the matter until Wm. Brown recovered and the matter was taken up with him, and then proceeded to apply the money on appellant's claim without waiting to hear further from Brown as he had promised. If Brown, upon learning that Ensign had applied the money on appellant's mortgage, had repudiated this transaction and ordered that it be applied on respondent's, appellant might have been liable. The difficulty is that, after learning what Ensign had done, Brown ratified it by accepting the fruits, that is the satisfaction of his debt and the canceled note and mortgage. In view of these facts it is not possible to say that the bank acted in violation of the mortgagor's instructions.

Viewing the evidence in the light of any theory of liability, which has been suggested, it is insufficient. Exceptions are taken to several of the instructions, but we find no reversible error in them.

The judgment is reversed. Costs are awarded to appellant.

Dunn and Wm. E. Lee, JJ., concur.

Budge, C. J., dissents.