(No. 4817.   April 2, 1928.)

OTTO HOEBEL and ROBERT WILLIAMS, as Executors of the Estate of O. P. WILLIAMS, Deceased, Appellants, v. JAMES RAYMOND, Defendant; GEORGE L. AMBROSE, Petitioner and Respondent.

[266 Pac. 433.]

E. W. Whitcomb and F. J. Cowen, for Appellants.

George L. Ambrose and Thomas & Andersen, for Respondent.

T. BAILEY LEE, J.—On October 1, 1919, O. P. Williams executed to defendant, Raymond, a five-year lease covering a certain ranch, livestock and equipment at an agreed rental of $15,706.60, one-half of which was to be paid October 1, 1922, and the remainder October 1, 1924, the day upon which said lease was to expire.

The first one-half of the rent not having been paid when due, Williams on October 3, 1922, instituted this action to recover the same together with other moneys claimed due, and seeking a reformation of the contract. A day later he served Raymond with a statutory notice to pay rent within three days or quit. The lessee refused to quit or pay rent, claiming later in his answer that no rent was due. Under a writ of attachment issued in the action certain of the defendant's livestock had been seized by the sheriff; and, by stipulation of the parties, sales were had and the proceeds, approximately $8,500, were paid into court to await judgment. On June 13, 1923, while the lessee was still in undisturbed possession, he executed to his attorney, George L. Ambrose, a promissory note in the sum of $2,000 secured by a mortgage on a crop of hay then growing on the premises. This obligation was to cover an agreed $1,500 attorney's fee, expenses and cash advanced or to be advanced within a time certain to assist the lessee in his farming operations. On September 26th following, the court appointed a receiver who took over the possession and the management of the leased property October 5, 1923. At that time there were 392.9 tons of hay on the place subject to the Ambrose mortgage. Notwithstanding that the mortgage was duly recorded, Ambrose on December 28th notified the receiver that he would not be permitted to feed the hay to the livestock in his possession, unless the receiver would account to him for the full amount of his mortgage or as much thereof as the hay was worth, valuing the same at $6 per ton.

The receiver promised so to account, and delivered to Ambrose his agreement in writing to that effect. Later, the hay having been practically consumed, and the clerk of the court having in his hands certain moneys turned over to him by the receiver, received from sales, over and above that already turned over to the plaintiff by court order, to wit, the sum of $2,161.88, Ambrose filed his petition praying that he be awarded a preferred lien on the hay to the extent of the amount due on his mortgage, and that the receiver be required to account. Plaintiffs, executors of Williams then deceased, answered the petition, charging the mortgage to have been made without any or sufficient consideration, not in good faith, and for the purpose of hindering, delaying and defrauding defendant's creditors; furthermore, that by consenting to the feeding of the hay petitioner had waived his mortgage security. The court after full hearing found that the mortgage had been given in good faith and for a valuable consideration, without any intent to hinder, delay or defraud the original plaintiff or any other creditor; that the receiver, after agreeing to account to the mortgagee, had actually fed the hay to the livestock in his possession, conserving and benefiting the estate, and that the agreement was a reasonable one demanding the approval and ratification of the court. The court further found that the hay was subject to certain labor liens prior to the lien of petitioner's mortgage, and he concluded that the remainder of the fund in the clerk's hands, $1,717.23, was impressed with a preferred lien in petitioner's favor, and so held in trust. Accordingly, judgment was entered, directing the clerk to pay Ambrose the sum specified. From this order plaintiffs have appealed.

It will be necessary to discuss only two of the errors assigned: that the court erred in awarding a preferred lien upon money derived from the sale of defendant's livestock, and that the court erred in finding that the crop mortgage in question was given in good faith, and without any design to hinder, delay or defraud creditors of the

defendant. We shall dispose of these assignments in inverse order.

At the time defendant, Raymond, executed the mortgage he was still the tenant of his landlord, Williams, and in possession. The prior service of the notice and his failure to comply therewith had not operated to end the relation. At most, there had been only a forfeiture of the lease, which could not of itself disestablish the relation until surrender by the tenant or his failure to satisfy a judgment of unlawful detainer within five days after its rendition. (C. S., secs. 7322, 7355; *Hunter v. Porter*, 10 Ida. 72, 77 Pac. 434; *Wilson v. Sadleir*, 26 Cal. App. 357, 146 Pac. 1061; *Odell v. Buttrick*, 126 Cal. 551, 59 Pac. 133.)

To avail one's self of a forfeiture, he must within a reasonable time not only declare but seek to enforce the same. Here, notice to quit or pay was served upon the tenant October 4, 1922. No summary action based on such notice was ever taken to dispossess him; and his possession was not disturbed until October 5, 1923, a year and a day later, when he was ousted by the receiver appointed upon supplemental complaint in the original action. Nowhere in the original, amended or supplemental complaints was he charged with unlawful detention or having forfeited his lease. A search of the pleadings fails to disclose any reference to the service of a notice to quit; and it must be concluded that the landlord waived his right to dispossess for nonpayment of rent after statutory demand: especially so, when he permitted the tenant to sow and cultivate during the crop season of 1923, and run the livestock as usual. The hay crop rightfully belonged to the tenant. Did he mortgage it in good faith? Upon abundant evidence not denied the trial court found he did. That the mortgagee was his own attorney cannot disturb this finding. No bankruptcy proceedings being involved, it is immaterial that he preferred his mortgage creditor over others, so long as the transaction was honest and by the court so found.

In conclusion, did the court err in impressing the estate's funds *in custodia legis* with a preferred lien in the mortgagee's favor? It is contended that Ambrose waived his security by consenting that the receiver feed the mortgaged hay. This is unquestionably the rule when the mortgagee unconditionally consents to a sale by the owner of the mortgaged property, even though the owner promises to turn the proceeds to him. This is upon the theory that the lien does not follow the purchase price, and the owner promises to deliver the mortgagee proceeds upon which there is no lien or trust.

Here, the transaction was between the mortgagee and the receiver who promised to feed the hay to livestock in his possession by court order, and account for the same. Had he given Ambrose a receipt, evidencing the hay's value, that receipt would have been a first lien on the conserved estate. Had he taken the hay without consent and disposed of it the court would have had to protect the mortgagee. (*Pickering v. Richardson,* 57 Wash. 117, 106 Pac. 614; *McRae v. Bowers Dredging Co.,* 86 Fed. 344; *American Trust & Sav. Bank v. McGettigan,* 152 Ind. 582, 71 Am. St. 345, 52 N. E. 793.) There is much stronger reason for protection when consent is induced by a receiver's agreement to account, and he promises to devote benefited receivership property in discharge of the accounting. It was shown and found that the hay was honestly fed, that the decedent's livestock were preserved and improved thereby and that the fund in the clerk's hands was the direct result of such improvement. That property was in all conscience answerable for the debt and impressed with a lien or trust running to the mortgagee. The situation is directly analogous to that presented by *Hoyt v. Clemans,* 167 Iowa, 330, 149 N. W. 442, L. R. A. 1915C, 166, where it was held that a mortgagee did not waive his lien on mortgaged chattels by consenting to their sale on condition that a third party clerk the sale and apply the proceeds on the mortgagee's claim. The court declared that as soon as the proceeds reached the clerk's hands they became

subject to the trust accepted, and that not even the mortgagor could have collected them from him; that the clerk's only duty was to hold and faithfully apply the funds. In the instant case, the proceeds of the hay were by the receiver converted into beef and horse-flesh, and in this form were no less subject to the trust undertaken.

Judgment affirmed. Costs to respondent.

Wm. E. Lee, C. J., and Budge, Givens and Taylor, JJ., concur.