(No. 5765. April 1, 1932.)

FIRST SECURITY BANK OF POCATELLO, a Corpora-
tion, Respondent, v. ZARING FARM & LIVESTOCK
COMPANY, a Corporation, et al., Respondents, and
WESTCOTT–ALLEN OIL COMPANY, a Corporation,
Appellant.

[10 Pac. (2d) 303.]

R. W. Jones and Merrill & Merrill, for Appellant West-
cott-Allen Oil Company.

F. M. Bistline and W. C. Loofbourrow, for Respondent Evans Mercantile Company.

Jones, Pomeroy & Jones, for Respondent First Security Bank of Pocatello.

GIVENS, J.—Respondent interplead the other parties herein to determine who was entitled to $764.67 held by it as the proceeds from the sale of certain wheat. The real controversy is between the Evans Mercantile Company, who claims as chattel mortgagee, and the Westcott-Allen Oil Company, who claims as execution creditor of the Zaring Farm & Livestock Company.

April 4, 1930, the Zaring Farm & Livestock Company gave a first chattel mortgage for $1,200 to the Citizens Bank & Trust Company, and a second mortgage for a larger amount to the Evans Mercantile Company, covering certain growing crops, part of which later harvested, was the wheat sold herein. Thereafter, during the summer of 1930, the Farm Company needed more money to carry on operations, and warehouse receipts covering some 600,000 pounds of the wheat covered by the above mortgages then in the Michaud Warehouse Company, were pledged to the respondent, First Security Bank of Pocatello, and the Citizens Bank & Trust Company, for loans made by them to the Farm Company.

Later, this wheat was sold with the consent of all parties, with the understanding between the Farm Company, the Mercantile Company and the Warehouse Company which sold the wheat, that after the two banks were paid, the balance was to be paid to the Mercantile Company. After the warehouse receipts had been pledged to the banks, and before the sale of the grain, the Westcott-Allen Oil Company brought suit against the Farm Company, and served garnishment proceedings upon the First Security Bank, later reducing its claim to judgment and likewise levying execution. . When the wheat was sold the Warehouse Company received the proceeds from the purchaser, deducted its charges, and made out two checks drawn on the First Security Bank: one to the Citizens Bank & Trust Company for its loan and the other to the First Security Bank for the balance, which covered the amount due the First Security Bank, and the $764.67 in dispute herein. The Citizens Bank & Trust Company, being paid in full, is now entirely out of the controversy. The First Security Bank cashed the check payable to it without an indorsement of the Evans Mercantile Company, paid itself, and held the balance because of the garnishment proceedings.

The court adjudged respondent, Evans Mercantile Company, entitled to the amount in dispute, and the Oil Company appeals. The First Security Bank deposited the $764.67 in court, and was dismissed from the suit with its costs.

The numerous errors assigned are summed up in the two main contentions of appellant: first, that the findings were insufficient, and, second, as a matter of substantive law and fact, that respondent consented to the sale and thereby waived its mortgage, and that no lien continued over as to the proceeds of the sale of the wheat.

J. Paul Evans, of the Evans Mercantile Company, testified in substance that when he consented to the sale, it was understood between him and a representative of the mortgagor, and the warehouse concern which sold the wheat, that the proceeds were to be used, first, to pay the banks,

and the balance applied on the Mercantile Company's mortgage. The representative of the Farm Company testified in substance to the same thing, as did also Mrs. Irvine, one of the employees of the Warehouse Company, and the checks drawn by the Warehouse Company after it had received the proceeds from the purchaser of the grain were drawn either in accordance with or in such manner as to carry out this understanding: first, one in favor of the Citizens Bank & Trust Company for the full amount of its note, and the other drawn in favor of the First Security Bank and Evans Mercantile Company, for the full amount of the note held by the First Security Bank, the balance being the $764.67 in dispute herein.

While the testimony of the respective officers of the two banks may be taken to indicate that they did not know of any condition attached to the sale, their testimony does not controvert that such condition was understood and agreed upon between the Mercantile Company, mortgagee, the Farm Company, mortgagor and debtor, and the Warehouse Company which sold the wheat; merely that they did not know of it. The banks knew of the mortgage held by the Mercantile Company, and that it had certain rights in the grain, because they insisted that the warehouse receipts be indorsed by the Mercantile Company before they would advance the loans upon the security of the warehouse receipts. The banks have been paid, claim no rights adverse to either party, and no rights are claimed by either of the real contestants herein, by or through the banks; hence, the banks and any questions concerning them are entirely out of the controversy.

 Even though the finding that the Mercantile Company had not waived its mortgage is, in view of the evidence and the vital point involved, viz., conditional or unconditional consent by the mortgagee to the sale, more of a conclusion than a finding, it, in effect, is sufficient to cover the point. (*Nohrnberg v. Boley*, (opinion on rehearing) 42 Ida. 48, at 71, 246 Pac. 12.) The issue of consent is, and was, recognized and considered as an issue in the case,

and argued by both parties, and neither misunderstands the point involved, and no prejudice is shown by the finding not being more specific. Findings should be liberally construed (*Cleveland v. Mochel,* 48 Ida. 37, 279 Pac. 410), and the evidence does not demand with such compulsion a contrary finding, i. e., of unconditional consent, as to require a reversal on this point. (*Storey & Fawcett v. Nampa & Meridian Irr. Dist.,* 32 Ida. 713, 187. Pac. 946.)

The Oil Company can claim no greater right to the money in dispute than the Farm Company possesses, or possessed at the time of the garnishment or execution. (*Feltham v. Blunck,* 34 Ida. 1, at 9, 198 Pac. 763; *Hudelson v. Sanders-Swafford Co.,* 111 Or. 600, 227 Pac. 310; *First Nat. Bank v. Riggle,* 195 Iowa, 189, 190 N. W. 143, 147; *Scurry v. Quaker Oats Co.,* 201 Iowa, 1171, 208 N. W. 860; *Borgen v. Aguski,* 51 S. D. 65, 212 N. W. 47.)

Starting, then, with the factual premise that the Mercantile Company, mortgagee, gave only conditional consent to the sale conducted by a third party not the mortgagor, and that the proceeds never came into the latter's possession, appellant's authorities do not touch the point; thus: *Peoples v. Whitworth,* 41 Ida. 225, 238 Pac. 306, *Adamson v. Moyes,* 32 Ida. 469, 184 Pac. 849, *Ramsey v. California Packing Corp.,* 51 Cal. App. 517, 201 Pac. 481, *Greer v. Newland,* 70 Kan. 315, 109 Am. St. 424, 78 Pac. 835, 70 L. R. A. 554, *Frick Co. v. Western Star Milling Co.,* 51 Kan. 370, 32 Pac. 1103, *Reese v. Kapp,* 82 Kan. 304, 108 Pac. 96, *Burnett v. Gustafson,* 54 Iowa, 86, 37 Am. Rep. 190, 6 N. W. 132, *Coughran v. Western Elevator Co.,* 22 S. D. 214, 116 N. W. 1122, *Stinson v. Sneed,* (Tex. Civ. App.) 163 S. W. 989, *Irish v. Citizens Trust Co.,* 163 Fed. 880, did not consider the effect of a conditional consent, or consent coupled with specific directions as to the disposition of the proceeds from the sale of mortgaged property, or where the sale was made by a party other than the mortgagor, or where the mortgagor was considered as acting as agent for the mortgagee.

*Bellevue State Bank v. Hailey National Bank,* 37 Ida. 121, 215 Pac. 126, recognizes the efficacy of a conditional consent at page 126, as follows:

"We conclude that, if Brown Bros. agreed with respondent, in consideration of its consenting to the sale, to apply the proceeds on its mortgage, and if appellant had notice of such agreement, it would be liable to respondent. The court so instructed the jury. There is absolutely no evidence to show such an agreement.

". . . . We conclude also that, if Brown Bros. directed appellant to apply the proceeds on the first mortgage or hold them subject to their orders, appellant would be liable for refusing to carry out those directions and for applying the money on its own mortgage. The court so instructed the jury. If such were the facts we think that an action based on this ground of liability could be sustained by respondent."

To the same effect are the holdings in *Western Seed Marketing Co. v. Pfost,* 45 Ida. 340, 262 Pac. 514:

"In the face of the recorded mortgage, it was incumbent on the purchaser to prove that the consent to the sale was actually given, and that it was an unconditional one. This court has held that where a mortgagee consents to a sale of the mortgaged chattels by the mortgagor, he waives the lien of his mortgage, and the purchaser takes title free of the mortgage lien. (*Knollin v. Jones,* 7 Ida. 466, 63 Pac. 638; *Bellevue State Bank v. Hailey National Bank,* 37 Ida. 121, 215 Pac. 126.) This is a general rule universally upheld, and necessary for the protection of purchasers of mortgaged chattels who have relied upon such consent. However, it is likewise a well-recognized rule that a sale of mortgaged chattels will not be valid as against the mortgagee when the consent of the mortgagee is qualified and upon a condition which the purchaser has promised but failed to perform."

And *Hoebel v. Raymond,* 46 Ida. 55, 266 Pac. 433:

"That property was in all conscience answerable for the debt and impressed with a lien or trust running to the mortgagee. The situation is directly analogous to that presented by *Hoyt v. Clemans,* 167 Iowa, 330, 149 N. W. 442, L. R. A. 1915C, 166, where it was held that a mortgagee did not waive his lien on mortgaged chattels by consenting to their sale on condition that a third party clerk the sale and apply the proceeds on the mortgagee's claim. The court declared that as soon as the proceeds reached the clerk's hands they became subject to the trust accepted, and that not even the mortgagor could have collected them from him; that the clerk's only duty was to hold and faithfully apply the funds."

It will be noted that the last case cites with approval and follows *Hoyt v. Clemans,* 167 Iowa, 330, 149 N. W. 442, L. R. A. 1915C, 166, in the holding favorable to respondent, in line with the construction placed upon *Hoyt v. Clemans, supra,* as appears in the authorities hereafter collated.

The following cases cited by appellant, either themselves recognize a different rule where the consent is conditional, or have been distinguished on this point by later decisions of the same jurisdiction:

*Utah-Idaho Live Stock Loan Co. v. Blackfoot City Bank,* 290 Fed. 588, which stated as follows:

"It is not intended to suggest that the plaintiff (mortgagee) could not have made an agreement with Robinson (mortgagor) that he should receive the proceeds of the sale and hold the same for plaintiff, or that such an agreement would not have been valid against attaching creditors, or against the defendant bank, with the notice it had before it applied the credit to the payment of the notes."

Such analytical interpretation of the above case has been likewise pointed out with approval in *National Bank v. Finn,* 81 Cal. App. 317, 253 Pac. 757, 765.

*Maier v. Freeman,* 112 Cal. 8, 53 Am. St. 151, 44 Pac. 357, has been distinguished in *McIntyre v. Hauser,* 131 Cal. 11, 63 Pac. 69, where the consent was conditional, the

court holding in the later case that the mortgagee was entitled to the proceeds of the sale, the facts as to garnishment, sale, etc., being quite similar to the situation herein.

The rule announced in *McIntyre v. Hauser, supra,* has been followed in *Farmers' State Bank v. Kavanaugh,* 98 Okl. 119, 224 Pac. 525, 527; *National Bank v. Finn,* 81 Cal. App. 317, 253 Pac. 757, 765; *United Film Ad Service v. Roach,* 222 Mo. App. 339, 297 S. W. 91, 94, and in the exhaustive note on this subject in 36 A. L. R. 1384, following *Farmers' State Bank v. Anderson,* 112 Neb. 413, 36 A. L. R. 1374, 199 N. W. 728, wherein the annotator points out that the statements in *Carr v. Brawley,* 34 Okl. 500, 125 Pac. 1131, 43 L. R. A., N. S., 302, and *Minneapolis Threshing Machine Co. v. Calhoun,* 37 S. D. 542, 159 N. W. 127, relied on by appellant, were *dicta,* because, as we also later point out, the mortgagees in both cases were held entitled to the proceeds.

*Luther v. Lee,* 62 Mont. 174, 204 Pac. 365, involved only a dispute between the mortgagor and a purchaser of the mortgaged property, wherein general authority for the sale was given (*Martin v. Duncan Automobile Co.,* 50 Nev. 91, 252 Pac. 322, at 323), hence, does not aid us in this investigation.

*Carr v. Brawley,* 34 Okl. 500, 125 Pac. 1131, 43 L. R. A., N. S., 302, considers only a case of general and not conditional consent and on the latter point has been distinguished, and the rights of the mortgagee recognized and protected in *Farmers' State Bank v. Kavanaugh, supra,* construing *Hoyt v. Clemans, supra,* and *Minneapolis Threshing Machine Co. v. Calhoun, supra,* cited by appellant, as in favor of respondents's position, relying upon *McIntyre v. Hauser, supra,* as sustaining authority. *Thex v. Shreve,* 38 Wyo. 285, 267 Pac. 92, 95, analyzes *Carr v. Brawley, supra,* and other authorities cited by appellant, arriving at the same result we do.

The paragraph from *Hoyt v. Clemans, supra,* relied upon by appellant, is only the first portion of the discussion, the controlling part as bearing on the facts herein, in this:

"It is true that in the case at bar the lienholders consented to the sale, but it was agreed that the proceeds should be received by Roberts, who was agreed upon as the clerk of the sale, and that he should hold and apply the same upon the indebtedness secured by the chattel mortgage and the landlord's lien. The evidences of these items of indebtedness were turned over to him before the sale, and he received the proceeds of the sale, not as the agent of the mortgagor, but as trustee for the lienholders. As soon as they reached his hands, they became subject to this trust, and he was under no obligation to pay them over to the original owners, nor could they have collected the same from him. His only duty to Clemans was to hold and faithfully apply the funds.

"The original owners of the property could not have recovered the funds from him, nor could they have brought any action against him save for a breach of trust. The money was never in the hands of the mortgagors or lessees, and the proceeds of the property has at all times been in the possession of the trustee, Roberts, pursuant to the agreement made at the time consent was given to the sale of the property. In this respect the case differs from those relied upon by appellant's counsel. *Bergman v. Guthrie*, 89 Iowa, 290, 56 N. W. 502, announces the principles which should govern this controversy.

"It is elementary that, as a general rule, a garnishing creditor acquires no greater rights against the garnishee than the judgment debtor would have had against him, had he sought to recover from the garnishee, and it is manifest, under the facts above stated, that the Clemans could not have recovered anything from Roberts save as for a breach of trust. What was done amounted to little, if anything, more than a foreclosure of the mortgage and landlord's lien by notice and sale, and in such case consent of all parties to the sale does not discharge the lien. But, if it does, the proceeds in either case are impressed with a trust by agreement of the parties. The trustee has at all times been in

possession of the proceeds, and his claim thereto, under the trust reposed in him, is superior to a garnishment by a judgment creditor of the original owner of the property. No amount of argument can make this plainer. If authorities be needed, we cite the following as sufficient for the purposes of the case: *Peregoy v. Wheeler,* 88 Iowa, 732, 55 N. W. 462; *Jones v. Turck,* 33 Iowa, 246.''

This holding in the above case has been followed not only by our own court, *Hoebel v. Raymond, supra,* but, in addition thereto, by *United Film Ad Service v. Roach, supra, Caroline State Bank v. Andrews,* 204 Wis. 393, 235 N. W. 794, 795, *Barrett v. Martzahn,* 186 Iowa, 548, 173 N. W. 72, *First Nat. Bank v. Riggle,* 195 Iowa, 189, 190 N. W. 143, at 147, *Wilson v. Geiss,* 153 Minn. 211, 190 N. W. 61, *Korner v. McKirgan,* 202 Iowa, 515, 210 N. W. 562, and *Scurry v. Quaker Oats Co.,* 201 Iowa, 1171, 208 N. W. 860, 861.

The portion of *Minneapolis Threshing Machine Co. v. Calhoun, supra,* quoted by appellant: ''The mortgagee's consent to the sale of chattels amounts to a waiver of the lien thereon so that the property will pass to the purchaser free from the lien. Generally the consent of a chattel mortgagee that the mortgagor may sell the mortgaged property given upon the mortgagor's agreement that he will apply the proceeds on the mortgage debt amounts to a substitution of the mortgagor's personal promise, in lieu of the mortgage security. In such case the proceeds of such sale while in the hands of the mortgagor are subject to levy by his judgment creditors,'' is only half the case, and while that portion announces the general rule, the balance is in accord with the decisive part of *Hoyt v. Clemans, supra.*

The above holding has been affirmed and followed in *James River Bank v. Hansen,* 51 S. D. 13, 211 N. W. 976, 978; *Borgen v. Auguski,* 51 S. D. 65, 212 N. W. 47; *J. I. Case Co. v. Rominger,* 77 Colo. 595, 238 Pac. 63, is to the same effect; *Rogers v. Whitney,* 91 Vt. 79, 99 Atl. 419, states the rule when the sale is unconditional, but a later

decision from the same court recognizes the rule would be different if the consent was not unconditional. (*Manley Bros. Co. v. Somers,* 100 Vt. 439, 138 Atl. 735. See, also, 11 C. J., p. 625.)

The above review and analysis shows a number of what we might term "interlocking decisions," which, while differing as to their reasons, are harmonious in their conclusions, sustaining the judgment in respondent's favor, which is ordered affirmed, including costs.

Lee, C. J., and Budge, Varian and Leeper, JJ., concur.