JAMES RIVER BANK OF FRANKFORT, Respondent, v. HANSEN, Appellant. (two cases).

(211 N. W. 976.)

(File Nos. 5710, 5711.   Opinion filed January 28, 1927.)

1. **Chattel Mortgages — Waiver — Mortgagee's Consent to Sale of Mortgaged Chattels Without Further Arrangement Waives Lien When Sale Occurs.**

    Consent of chattel mortgagee to sale of mortgaged property, without any further arrangement or agreement, waives lien on mortgaged property as soon as sale takes place.

2. **Assignments — Mortgagee's Agreement with Mortgagor to Sell Mortgaged Property and Apply Proceeds to Mortgage Debt Was Assignment of Proceeds.**

    Agreement between mortgagee bank and mortgagor for sale of mortgaged property, providing that mortgagee's employee should clerk sale, collect proceeds and apply them to mortgage

debt, **held** assignment of proceeds of sale so that mortgagee could sue purchaser for value of property bought.

3. **Set-off and Counterclaim—As Regards Right of Set-off, Holders of Note Cannot Complain of Maker's Agreement to Sell Mortgaged Property at Public Sale.**

   Holders of note cannot complain because maker, as mortgagor in chattel mortgage, agreed with mortgagee to have public sale of mortgaged property and apply proceeds to mortgage debt as regards their right to set off note against purchase price of goods bought at sale, where purpose was to obtain most advantageous price at least cost of sale.

4. **Set-off and Counterclaim—Notice—Buyers at Public Sale of Mortgaged Property Were Put on Inquiry as to Mortgagee's Interest in Proceeds as Regards Their Right of Set-off.**

   Where chattel mortgage was recorded, public sale of mortgaged property at which mortgagee's employee was clerk held to put buyers seeking to set off note against purchase price on inquiry as to what interest mortgagee had in proceeds, and they are charged with knowledge of agreement between mortgagee and mortgagor which such inquiry would have given.

5. **Set-off and Counterclaim—Where Mortgagor Agreed to Sell Property and Apply Proceeds to Mortgage Debt, Buyers Cannot Set Off Debt of Mortgagor Against Purchase Price.**

   Under agreement between chattel mortgagee and mortgagor for public sale of mortgaged property, proceeds of which were to be applied to mortgage debt, lien of mortgage followed proceeds, so that buyers could not set off debt of mortgagor against purchase price, where proceeds of property were insufficient to pay mortgage debt.

6. **Evidence—Where Mortgagee and Mortgagor Agreed in Writing to Sell Mortgaged Property at Public Auction, Oral Agreement that Sale Expenses Be Paid from Proceeds Held Not to Vary Written Contract.**

   Evidence of oral agreement between chattel mortgagor and mortgagee that expenses of sale of mortgaged property should be paid from proceeds held not inadmissible as varying terms of written contract providing that property should be sold at public auction and proceeds applied to mortgage debt, since written agreement included right to pay expenses of sale.

Note.—See, Headnote **(1)**, American Key-Numbered Digest, Chattel mortgages, Key-No. 219, 11 C. J. Sec. 339; **(2)** Assignments, Key-No. 48, 5 C. J. Sec. 78, **(3)**, **(4)** and **(5)**, Set-off and counterclaim, Key-No. 41, 34 Cyc. 712; **(6)** Evidence, Key-No. 441(1), 22 C. J. Sec. 1667.

Appeal from Circuit Court, Spink County; Hon. M. Moriarty, Judge

Actions by the James River Bank of Frankfort against Lucius Hansen and against Martin Hansen. Judgments for plaintiff, and defendants each appeal. Affirmed.

*W. F. Bruell,* of Redfield, for Appellants.
*Sterling, Clark & Grigsby,* of Redfield, for Respondent.

SHERWOOD, J. These cases were submitted on the same evidence in the lower court, and were argued and submitted together in this court, and, while separate appeals were taken, they involve practically identical questions of law and will be determined in one opinion.

The facts necessary to a determination of these cases are as follows:

On the 2nd of September, 1921, Peter Van Houten, being indebted to respondent bank, executed and delivered to it a promissory note for $3,400 and a mortgage on a large amount of personal property securing the same. The mortgage was filed about September 2, 1921. The mortgage became due, and Van Houten was unable to pay. Thereupon, and on October 1, 1922, Van Houten and respondent entered into a written agreement, which recited that the mortgage was past due, and both mortgagor and mortgagee were of the opinion that the property could be sold to better advantage at public auction, but not at foreclosure sale, and that the property should be sold at public auction and some employee of the bank should clerk the sale, collect the proceeds thereof, and such proceeds should be retained by the bank and applied on the indebtedness secured by said chattel mortgage, balance, if any, paid to the mortgagor or held in trust for him as he directed; and further provided:

"It is understood that by consenting to said sale it is not the intention of the party of the first part to waive its mortgage lien herein, and that the said property is to be sold in the manner above specified for the purpose only of avoiding the expenses and loss incident to a chattel mortgage foreclosure sale."

This agreement was signed by respondent bank and Peter Van Houten.

It was further orally agreed between the bank and Van

Houten that the expenses of said sale were to be paid out of the proceeds thereof. Thereafter, and on the 6th day of October, pursuant to this agreement, the property covered by this chattel mortgage and some other property belonging to Peter Van Houten was sold at public auction. John O. Bahde, cashier of respondent bank, clerked the first part of the sale, and Mr. Coleman, assistant cashier of said bank, clerked the latter part of the sale. A full record was kept of the sale of each article sold, the name of the purchaser, and the price bid or paid.

. At the time of the sale three brothers, named Peter, Lucius and Martin Hansen, were doing business as copartners under the firm name of Hansen Bros., and were the owners of a promissory note given by Peter Van Houten to the Farmers' State Bank of Turton for $1,027.25, which note was due September 1, 1922, with interest at 10 per cent, per annum from date, and was unpaid. At the sale Martin Hansen bid in a header and corn plow, and bought of another bidder a gray mare sold at said sale at total bid of $207. Peter Hansen bid in a drill, corn planter, and Reo truck for a total bid of $831. Some other small articles were also bid in by the Hansens, which will be considered later in the opinion. This property was left on the premises where sold, and a few days thereafter Martin Hansen appeared at the James River Bank in Frankfort, and offered to settle for all the property he and Peter Hansen had bought at the sale, including said gray mare, by indorsing the amounts they had bid or paid on the note they held against Peter Van Houten. This settlement was refused by the bank. The Hansens refused to settle in any other way or pay for the property bought, but later took possession of all the stuff purchased by them, and removed it from the place where it was sold and have since retained the same.

Respondent bank then brought two actions, one against Lucius Hansen for the property bid in by him at the sale, and one against Martin Hansen for the property bought by him at the sale. The complaints and answers, so far as the question of law involved, were identical. Findings of fact and conclusions of law were made in favor of plaintiff in each case and judgment was entered against each defendant separately for the amount of property purchased by him at the sums they severally bid; and defendants have each appealed.

The seventeen assignments of error are all argued by appellant under two groups, and we will so consider them. Appellants state their contention as follows:

"Without discussing the assignments of error individually, we refer to same at this time collectively and under two groups, because primarily two questions are involved: First. Would the plaintiff lose its mortgage lien by permitting a sale of the mortgaged property, and under this case would the execution of Exhibit No. 3 alter the relations of the parties in any particular and preserve a lien upon the property mortgaged and sold or pass title to the proceeds of the sale to the mortgagee. The second question, much like the first, is: Could the mortgagee, the plaintiff herein, follow the proceeds of the sale, and under this subject could the plaintiff recover of the defendant who purchased at this sale and had an offset against Peter Van Houten, the mortgagor? Could the plaintiff claim any title or lien upon the proceeds of the sale realized upon property not covered by the mortgage?"

[1] We think it is well settled in this state that the consent of the mortgagee to the sale of the mortgaged property, without any further arrangement or agreement, waives his lien upon the mortgaged property as soon as the sale takes place. Mariner v. Patten, 28 S. D. 163, 132 N. W. 685; Nelson v. Badker, 39 S. D. 108, 163, N. W. 569.

Mariner v. Patten, supra, was an action for the possession of personal property brought by the mortgagee for a colt so sold and delivered. Verdict was directed for plaintiff. This court held plaintiff could not recover: First, because the proof showed he was never in possession of the property as he had pleaded; second, because he had consented to the sale. But, even in this case, the court said: "The real party in interest might maintain an action for the value of the property sold."

In Nelson v. Badker, supra, one H. E. Jones intervened, claiming certain funds in the hands of the First National Bank of Gary as the proceeds of the sale of certain property on which he held a mortgage, which property was sold under an agreement between himself and the mortgagor, "that the proceeds of such sale should be received and taken possession of by the First National Bank of Gary to be applied on intervener's mortgage; that

the bank should act as clerk of sale, receive the proceeds of sale to be applied on the payment of intervener's mortgage." Judgment was rendered against intervener in the lower court. Reversing this judgment, this court said: "We are of the opinion that this arrangement and consent to sale by the intervener did not in any manner waive or defeat his mortgage lien or his right to the proceeds of the sale of said mortgaged property"—citing Minneapolis Threshing Machine Co. v. Calhoun, 37 S. D. 542, 159 N. W. 127, where we held such proceeds were impressed with a trust and up to the amount due on the mortgage must be applied only to the payment of the mortgage debt; that a garnishing creditor subsequent to such an agreement obtained no lien upon or right to such fund in the hands of the trustee by virtue of his garnishment.

Notwithstanding our previous decisions, it is still the contention of each appellant that he bought this property bid in by him, knowing he had an offset; that he had a right to pay and did pay for what each defendant bought by indorsing the amount of what they both purchased on the back of the Peter Van Houten note to Farmers' State Bank of Turton which, prior to the time of the sale, had been indorsed to, and was owned by, Hansen Bros. and presenting such note so indorsed to plaintiff bank.

[2] With these contentions we cannot agree. The written agreement, made between the mortgagor and mortgagee before the sale, expressly provided that some employee of the mortgagee should clerk the sale and collect the proceeds thereof; and such proceeds should be retained by the mortgagee and applied on the indebtedness secured by the chattel mortgage, and that by consenting to said sale it was not the intention of the mortgagee to waive his mortgage lien.

This agreement in legal effect was an assignment of the proceeds of the sale, and the mortgagee had the right to bring his action against each purchaser separately for the value of the property so sold to him.

Speaking of the effect of such an agreement, 11 C. J. p. 633, says:

"In some jurisdictions it is held that the mortgage lien is transferred to the proceeds of sale, where there is some agreement between the parties to the mortgage that the property shall be sold

in the name of the mortgagee, or that the property or money received in exchange shall belong to the mortgagee, or shall be applied on the mortgage debt, or shall be subjected to the lien of the mortgage as a substitute for the property sold, in which case the mortgagee may recover from the purchaser on the common counts in assumpsit."

See Nelson v. Badker, supra; Mariner v. Patten, supra; Minneapolis Threshing Machine Co. v. Calhoun, supra; Smith v. Crawford County State Bank, 99 Iowa, 282, 61 N. W. 378, 68 N. W. 690; Flood v. Butzbach, 114 Mich. 613, 72 N. W. 603, 68 Am. St. Rep. 501; Fuller v. Rhodes, 78 Mich. 36, 43 N. W. 1085; Fairweather v. Nelson, 76 Minn. 510, 79 N. W. 506.

[3] Appellants allege in their answer that the above agreement was a secret agreement or conspiracy between the mortgagor and mortgagee. No evidence was offered to show fraud or in any way to impeach this agreement or to show it was secretly made or made for any other purpose than that expressed in the agreement; namely, to save all the expense possible in the sale and get the most advantageous price obtainable for the property. To obtain the most advantageous price at the least cost of sale benefited all the creditors of Van Houten. Appellants could not complain either of the making or carrying out of such an agreement.

[4] Appellants assert no notice of this agreement was given before sale. That they would not have bid on the property had they known respondent would claim the proceeds. It is admitted respondent's mortgage had been on file for more than one year before the sale; that it was still on record on the date of the sale and unsatisfied. Defendants therefore had constructive notice of the existence of the mortgage and the property claimed thereunder. They saw the bank officials there clerking the sale, making settlements, and receiving the proceeds of the sale. We think this was sufficient to put defendants upon inquiry as to what interest respondent bank had in the proceeds of the sale, and they are charged with all the knowledge such an inquiry would have given.

[5] It follows that under this agreement the lien of the mortgage followed the proceeds of this sale, and the defendants had no right of set-off until the mortgage debt was fully paid. As

the proceeds of all the mortgaged property was insufficient to pay the mortgage debt, defendants had no right of offset as to any of that property.

[6[ The court below admitted evidence tending to show that, in addition to the written agreement above shown, it was agreed between the mortgagor and mortgagee verbally that the expenses of sale were to be paid out of the proceeds thereof, and the court found such agreement was made. Appellant contends the admission of this evidence tended to contradict the terms of the written agreement. We think the agreement to sell at public auction, included the right to pay the expenses of such sale. The oral evidence, therefore, in no way varied the terms of the written contract.

We have carefully examined all the evidence and assignments of error, and think the property claimed by respondent was reasonably described in the mortgage and identified by the evidence.

Finding no error in the record, the judgment of the lower court is affirmed in each case.