Robbins, J.
This is an action on a judgment. It is agreed that the amount now due from the principal defendant is $1331.32 with interest thereon from February I, 1935.
This action was begun by trustee process. The General Cigar Company, Inc., was summoned as trustee. John J. Zagrodnik, Agent of the General Cigar Company, Inc., upon whom this writ was served, filed an answer stating that at the time of the service of said writ upon him he had in his possession thirteen hundred ninety-four dollars and ninety-two cents ($1394.92) the property of John Beszko and Emma Beszko.
There were interrogatories to the trustee and answers and an order for further answers. June 15, 1940, upon *246 motion, of the plaintiff, it was ordered that the trustee be defaulted.
On March 6, 1940, The Trustees of the Smith Charities filed a petition as adverse claimant of the fund in the hands of the trustee. On March 21, 1940, against the objection of the plaintiff, the Trustees of the Smith Charities, a corporation, was admitted to appear as an adverse claimant.
There was a trial on the merits, the only matters in dispute were those relating to the rights of the adverse claimant.
It appeared, as set forth in the decision of the Trial Court, that on May 6, 1939, John Beszko and his wife, Emma Beszko, signed a promissory note payable to The Trustees of the Smith Charities, for fifteen hundred dollars, payable on demand with interest at five per cent per annum payable semi-annually. This note was secured by a chattel mortgage duly recorded in the office of the Town Clerk of Hatfield. The property covered by this mortgage was therein described as follows:
“All our crops, whether already planted or to be planted during the 1939 crop season, including 5 acres of tobacco, 1Yz acres of set onions, 4 acres of potatoes, acre of carrots, and all other crops of every kind and description to be raised during the 1939 crop season.
“The foregoing crops will be raised on the premises known as the Beszko farm of which one tract of ten acres more or less is situate in that part of said Hatfield known as Bradstreet, and of which one tract of seven acres is situate in that part of said Hatfield known as Three Mile Brook in North Hatfield. ”
*247 The title to the land referred to in-this mortgage' was in Emma .Beszko,
The Trustees of the Smith Charities had had prior dealings with Mr. and Mrs. Beszko and held a real estate mortgage on this property on which there were still taxes due to. the Town of Hatfield and certain insurance premiums chargeable to Mr. and Mrs. Beszko.
In consideration for the $1500 note and mortgage it was agreed that The Trustees of the Smith Charities should pay these taxes and insurance premiums, and should advance money for raising the crops referred to.
In accordance with this agreement The Trustees of the Smith Charities paid to the Town of Hatfield taxes on the real estate for 1936,1937 and 1938, amounting to $516.40 and also paid insurance premiums 63.60
$580.00
Crops were raised as agreed, and from time payments were advanced as agreed and were charged to this loan in the amount of $1472.61 together with $580. paid for taxes and insurance premiums, making a total of $2052.61.
The credits given on this note amounted to $615.09 leaving a balance exclusive of interest in the amount of $1437.52.
The controversy in this action relates solely to the crop of tobacco, or its proceeds. This is the crop described in the mortgage. It was raised on land of Emma Beszko, wife of John Beszko, the principal defendant. It was raised by said John Beszko with his own labor and the labor óf his wife and children, with the help of money advanced by the claimant for the raising of this tobacco and other crops as already stated. Said John Beszko *248 raised this crop without interference or control by the claimant. After the tobacco had been harvested, and while it was in the shed on the property of Mrs. Beszko, the President of The Trustees of the Smith Charities visited the Beszko farm and the tobacco was shown to him. He did not take formal possession of it, and he gave no directions as to its care and management.
When the tobacco was ready for sale Charles E. Morton an agent of the General Cigar Co., Inc., the trustee in this action, conferred with the defendant John Beszko. After some negotiations, a written agreement for the purchase and sale of this tobacco was signed by the General Cigar Co. and by John Beszko.
The following is a copy of this sales agreement:
Mortgaged to Smith Charities, Northampton, Mass. Date Oct. 19, 1939 Havana Seed Contract No. 752
THIS CERTIFIES THAT WE HAVE BOUGHT AND
his
John Beszko HAS SOLD her
their
Crop of 1939 Havana Seed Tobacco Consisting of about 5 Acres on the Following Terms:

5 Acres at 24$ Cts. per lb. in the Bundle

To be Delivered at Whse. by the Seller, When Notified by the Buyer to do so, in Good Merchantable Condition, Sound and Free from all or any Damage. The Seller Assumes all Responsibility for Loss or Damage to the Crop Prior to Delivery and Acceptance as Herein Provided, and Warrants the Crop Free of all Encumbrances at the Time of Delivery.
*249 Deposit $125.00 • Boxee General Cigar Co., Inc.
Check No. 1053 Bank Hart. • By Charles E.. Morton
' Seller: P. O.
John Beszko Bradstreet, Mass.
When this contract w]as executed the agent of the General Cigar Co. had actual knowledge of the mortgage to the claimant.
The President of the Trustees of the Smith Charities talked over the telephone with John Zagrodnik, an officer of the General Cigar Co., Inc. He told Zagrodnik that the mortgage was still in existence and that the check for the proceeds should he made payable to the Smith Charities.
On January 17, 1940 the General Cigar Co., Inc., took possession of the tobacco in question, and thereafter on the same day this writ was served on the said trustee.
The adverse claimant filed the following requests for rulings:
(1) That the mortgage from Emma Beszko and John Beszka to The Trustees of the Smith Charities for fifteen hundred dollars ($1500), dated May 6, 1939, recorded May 8, 1939, was valid under the provisions of G. L. (Ter. Ed.) Chapter 255 as amended.
(2) That the General Cigar Co., Inc. had actual notice of the mortgage of The Trustees of the Smith Charities at the time it dealt with John Beszko with reference to the tobacco crop in question, and that the General Cigar Co., Inc. agreed to take delivery of said crop subject to the mortgage of The Trustees of the Smith Charities.
*250 (.3) That said mortgage contained in it a provision-that no' sale could be made without the consent in writing of The .Trustees of the Smith Charities.
(4) That since no such consent was given, the General Cigar Co., Inc. did not acquire title to the crop mortgaged to The Trustees of the Smith Charities by Emma Beszko and John Beszko.
(5) That the goods, effects and credits in the hands and possession of the General Cigar Co., Inc. were not subject to trustee process for the following .reasons:
a. They were not the sole property of the defendant, John Beszko.
b. They were not absolutely due the defendant, John Beszko, alone.
c. They represented credits in part due for the wages for personal labor or services of the wife and minor children of the defendant, John Beszko.
d. Under the terms of the mortgage the property in the hands and possession of the General Cigar Co., Inc. at the time of the service of the writ in this case belonged to The Trustees of the Smith Charities.
The - Trial Court’s decision disposed of these rulings as follows':
I grant the first, second and third requests.
I refuse the fourth request. I find that-this provision of the mortgage was waived by the president of The Trus *251 tees of the Smith Charities, and that the claimant is estopped from insisting upon this provision.
I refuse the fifth request. The facts on which this request is based have been fully dealt with above. If this request were granted the claimant could not recover in this action, the trustee would be discharged, and there would be no funds in his hands to be dealt with by the court.
The plaintiff also duly filed requests for rulings* as follows:
1. The adverse claimant has the burden of establishing its claim. Granted.
2. The adverse claimant is bound by the allegations in its petition to be admitted as a party. Granted.
3. The claimant cannot properly show that nothing was due the principal defendant. Granted.
4. If nothing was due from the trustee to the principal defendant at the time of service on said trustee, there is nothing to and upon which this claimant can establish a claim. Granted.
5. When the plaintiff’s writ was served the defendant was under an obligation by contract with the trustee to pay any encumbrances upon the tobacco delivered by him. Granted.
6. Any arrangement between the defendant and the trustee for the payment of a mortgage to the adverse claimant not within the Statute of Frauds could not alter or transfer to the trustee the defendant’s obligation to free the tobacco delivered to the trustee from all encumbrances. Refused. 1 do not find awy agreement by the trustee to *252 pay a mortgage to 'the claimant. : The findings as to the agreement between the trustee and the claimant have been stated 'above,;-
7. If goods mortgaged to The Trustees of the Smith Charities Were sold by the principal defendant to the General Cigar Company, Inc., the plaintiff is entitled to reach and hold the proceeds of such sale in an action against said principal defendant under the trustee process by service of the writ on said General Cigar Company, Inc., prior to the time such proceeds have been collected and paid over to said mortgagee. Refused. In the third line of this request the word “defendant” is used when “plaintiff” was obviously intended, but the refusal is not based upon this clerical error.
8. Its petition containing no allegation that claimant has ratified a sale by its alleged mortgagor of mortgaged chattels, the claimant can show no title to the proceeds of any such sale. Refused.
9. If the General Cigar Company, Inc., purchased and accepted mortgaged property from the defendant, it did not thereby become obligated to pay the mortgage debt. Granted.
10. Acquiescence by the adverse claimant in the Trustee’s retention and handling of tobacco claimed to be subject to its mortgage and delivered to the trustee by the defendant, can be found to amount to a ratification of a sale by the adverse claimant. Granted. The only ratification in this case was conditioned upon the payment by the trustee to the claimant.
11. The petition does not entitle claimant to admission as a party, containing no allegation that any funds due upon the sale and delivery of tobacco by the principal de *253 fendant to-the trustee are due. upon a sale of tobacco owned by or mortgaged to the claimant. Refused.
12. The claimant’s allegation, that it did not assent to a sale of the tobacco crop described in its petition by the defendant to the trustee until and after an accounting a payment by the principal defendant and his wife to the claimant of the amount of its claim, is inconsistent with the claimant’s allegation that the principal defendant was not empowered to sell the crops covered by said mortgage without the consent of the claimant. Refused.
13. The claimant’s allegation, that it did not assent to a sale of the tobacco crop described in its petition by the defendant to the trustee until and after an accounting and payment by the principal defendant and his wife to the claimant of the amount of its claim, is inconsistent with the claimant’s allegation that it did not consent to a purported sale by the principal defendant of said tobacco crop to the alleged trustee. Refused.
14. A mortgagee not in possession has no claim to the proceeds of a sale by the mortgagor of mortgaged chattels. Refused as not applicable to facts found as stated hereimbefore.
15. Claimant, not having had possession of the tobacco crop described in its petition, has no claim to the proceeds of a sale of same by the mortgagor. Refused as not applicable to facts found as stated hereinbefore.
16. The mortgage held by the claimant contains no clause as to after acquired property. Granted.
17. The claimant’s alleged mortgage did not attach to tobacco not in being when such mortgage was executed as it came into the possession of the principal defendant, and the claimant could have had no interest therein until *254 such time as it took possession under said mortgage. Refused.
18. The adverse claimant cannot establish its claim under its mortgage in the absence of a designation in such mortgage of a storage place for the mortgagor’s crop to be grown or growing. Refused.
19. A storage place not having been designated in the adverse claimant’s mortgage, it cannot establish its claim under same without proving that the mortgagor’s crop to be grown or growing for a specific year was so stored or marked as reasonably to distinguish the same from other chattels of the mortgagor. Refused.
20. Without a mortgage of goods in being the adverse claimant cannot establish its claim in the absence of proof of possession later taken or an equivalent action whereby such goods could be ascertained, by reference to the mortgage or by physical inspection, to be distinguished from other chattels of the mortgagor. Refused.
21. The claimant should account for the value of chattels included in its alleged mortgage other than the tobacco crop therein mentioned. Refused.
22. The claimant cannot establish a claim in excess of the balance of the mortgage debt at the time of service of the plaintiff’s writ. Granted as matter of law, but inapplicable to facts found.
23. At the time of service of the plaintiff’s writ the adverse claimant had no claim or rights in set-off in excess of $935.00. Refused.
24. If an arrangement entered into between the adverse claimant and the trustee and/or others was actually or constructively fraudulent as to the plaintiff, the plaintiff may avoid same. Refused as inapplicable to facts found.
*255 25. The adverse claimant cannot avail itself of a verbal promise or agreement on the part of the trustee barred within the Statute of Frauds. Refused.
26. No agreement of the trustee to pay the defendant’s mortgage debt to the adverse claimant was effective prior to or at the time of service of the plaintiff’s writ. Refused as inapplicable to facts found.
27. Any agreement between the adverse claimant and the trustee which the latter entered into on the basis of a direct or implied representation subsequent to October 10, 1939, by the adverse claimant to the trustee, that it was entitled to the full value of its mortgage or to any sum in excess of $935.00 was in law, fraudulent. Refused.
28. Any agreement between the adverse claimant and the trustee which the latter entered into on the basis of a direct or implied representation subsequent to October 10, 1939, by the adverse claimant to the trustee, that it was entitled to the full value of its mortgage or to any sum in excess of $935.00, was in law fraudulent. Refused as inapplicable to facts found.
29. No fiduciary relation could arise between John Beszko and The Trustees of the Smith Charities from the relation of creditor and debtor shown by the adverse claimant upon which the claimant could prevail on the theory of a trust. Refused.
30. If it appears that the claimant holds a valid assignment from the principal defendant only as security for a debt, the plaintiff requests the Court to ascertain and determine the amount due upon such debt at the time of service of the writ upon trustee. Refused.
31. If the balance of the debt purporting to have been secured by the adverse claimant’s mortgage did not exceed *256 $935.00 when the writ was served on the trustee, the admission or other participation in this case of such claimant cannot bind or affect the rights or obligations of any other party as to the excess above such sum of the value of any property then in the hands and possession of the trustee. Refused as inapplicable to facts found.
The Trial Court found for the plaintiff against the defendant in the sum of $1803.50, and for the claimant against the trustee in the sum of $1394.92.
Far too many pleadings were filed in this case, and many points are argued in the briefs which are not open on the report. The only grievances claimed in the report are those claimed by the plaintiff as follows:
“Because the court denied its requested rulings numbered 6, 7 8, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30 and 31, qualified 10, and held 22 inapplicable; and the Court granted the adverse claimant’s requested rulings numbered 1 and 2;
And because the plaintiff alleges the court’s finding for the clamant was erroneous as matter of law, and particularly so upon its statement in disposing of the plaintiff’s sixth requested ruling of law.”
The grievances claimed on the granting of the claimant’s request #2 and at the denial of the plaintiff’s request #23 are without merit because these requests are for findings of fact which cannot be disturbed by this court. G. L. C. 231 § 108, Schon vs. Odd Fellows Bldg. Assn., 255 Mass. 465, 467.
The grievances claimed because of the refusal to give the plaintiff’s requests numbered. 11, 12, and 13 relate to the action of the court in admitting the adverse claimant as a party to the action. The record shows that the plain *257 tiff filed requests for rulings at the hearing on the petition of the adverse claimant to be admitted as a party, to the refusal of which it later filed a claim for a report, which did not comply with Buie 27. If the plaintiff had any rights based on this claim they were waived by the failure to include them in the report. In any case the admission of the claimant as a party was correct. Georgeopoulos vs. Georgeopoulos, 303 Mass. 231, 233.
The claimant’s request #1 which was granted and the plaintiff’s requests numbered 17, 18, 19, and 20, which were denied, all dealt with the validity of the claimant’s mortgage on the tobacco crop. The Trial Court ruled that the mortgage was valid. This ruling was correct. Even before the enactment of Chapter 86 of the Acts of 1935, now G. L. Chap. 255, § 7A, such a mortgage was good. Parsons vs. American Agriculture Chemical Co., 280 Mass. 424, and cases there cited. The Acts of 1935 confirmed this law.
It is important in this case to see just what the findings are as to the sale made by the defendant to the trustee. In his disposition of the claimant’s request #4, the Trial Court found that the claimant had waived the provision in the mortgage requiring its written consent to the sale; in dealing with the plaintiff’s request #6, he found there was no agreement by the trustee to pay the claimant’s mortgage; but in disposing of the plaintiff’s request #10, he found that the only ratification of the sale by the claimant was conditioned upon payment by the trustee to the claimant. The fact that the trustee had actual, as well as constructive, notice of the mortgage is clearly found.
There is no doubt that had the claimant’s consent to the sale been unconditional, the trustee would have taken *258 good title to the tobacco. Shearer vs. Babson, 1 Allen 486. Pratt vs. Maynard, 116 Mass. 388; Stafford vs. Whitcomb, 8 Allen, 518. Where, however, the consent was conditional, as in the case at bar, the mortgage lien remained upon the tobacco. Arnold vs. First National Bank of Cripple Creek, (Colorado) 97 A. L. R. 643, and the annotation thereafter, especially at page 656 et seq.
It has been held that where a mortgagee consented to a sale by the mortgagor on condition that the purchaser pay to the mortgagee the price of the cattle involved, that the transaction constituted an equitable assignment to the mortgagee of the mortgagor’s claim to the purchase money, and that such purchase money could not be garnisheed in the hands of the purchaser by a creditor of the mortgagor. McIntyre vs. Hauser, 131 Cal. 11, 63 Pac. 69. See note 101 A. L. R. 81 at 89. In the case of Bank vs. Raymond, 57 N. H. 144, the plaintiff was a chattel mortgagee of hay, who brought assumpsit against the purchaser of the hay from the mortgagor. The plaintiff had verbally consented to the sale, but the mortgagor did not tell the defendant of the mortgage. Before delivery or payment of’ the price the plaintiff told the defendant of the mortgage and that he would hold the defendant accountable for the price. The court said that the mortgagor was the agent of the mortgagee in making the sale, and that payment was due the plaintiff as principal. Other eases where a chattel mortgagee prevailed over an attaching creditor are Fuller vs. Mich. Cent. R. Co., 78 Mich. 36, 43 N. W. 1085; Flood vs. Butzbach, 114 Mich. 613, 72 N. W. 603; and Caroline State Bank vs. Andrews, 204 Wis. 393, 235 N. W. 794.
*259 Whether it be based on the theory of undisclosed principal, the theory of equitable assignment, or some other equitable theory, we are of the opinion that in the case at bar the claimant as mortgagee had a claim against the trustee prior to that of the plaintiff for the price of the tobacco. “Privity between the trustee and the claimant is not a necessary element in such proceedings. A claimant may assert either legal or equitable rights to goods, effects or credits in the hands or possession of a trustee”. Levin vs. Lerner, 290 Mass. 294, 298, and cases there cited.
This disposes of the plaintiff’s claim to be aggrieved by the denial of its requests numbered 7, 8, 10 (which does not include the fact that the consent to the sale was conditional) 14, and 15.
The plaintiff has no grievance on the denial of its request #6, for the Trial Court found there was no agreement by the trustee to pay the mortgage.
Plaintiff’s request #21 was rightly refused. The mortgage covered crops of tobacco, onions, potatoes and carrots, and the statement of credits shows credits from the sale of all such crops. The report shows no evidence of any part of these crops not being credited. The plaintiff therefore was not harmed by the refusal of the request.
The Trial Court rightfully ruled plaintiff’s request #22 to be inapplicable to facts found. The request dealt with an excess of the amount of the claimant’s charges over the amount of the claimant’s mortgage. The statement of the charges and credits against the mortgage shows a balance of $1437.52 due thereon, which is less than the amount for which it was written. From the statement it is impossible to tell when claimant paid the taxes to the Town of Hatfield or the insurance premiums, and it cannot be assumed *260 in the facts of the decision that these items were paid at a time when they brought the total charges to an amount which, less the credits then entered, was greater than the amount for which the mortgage was written. The mortgage secured a note for $1500 but it was orally agreed by the parties to it that the claimant instead of paying over that sum to the Beszkos should pay off certain taxes and bills for insurance, and make advances for raising the crops covered by the mortgage. Such a mortgage was valid up to the amount for which it was written. Hall vs. Toy, 131 Mass. 192, and gave to the claimant priority over later encumbrances. Gray vs. McLellan, 214 Mass. 92, 96; Gerrity vs. Wareham Sawings Bank, 202 Mass. 214, 221.
The denial of plaintiff’s requests #24 to #28 inclusive was correct. All these requests were based upon an alleged agreement of the trustee as to the mortgage, while the court found no such agreement was made.
As there was no finding of a fiduciary relation between the claimant and the defendant, the plaintiff was not harmed by the denial of its request #29. Both request #30 and request #31 were based on assumptions of fact contrary to the findings of the Trial Court.
The report is to be dismissed.

 Rulings of Court on these requests appear in italics.