CAROLINE STATE BANK, Respondent, vs. ANDREWS, Appellant.

*March 12—April 7, 1931.*

394

For the appellant the cause was submitted on the brief of *A. M. Andrews* of Shawano.

For the respondent there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein*.

FRITZ, J. In February, 1928, the defendant and the Lily Lumber Company (hereinafter called the Lumber Company)

contracted for the sale to the defendant, at specified prices, of all of the Lumber Company's 1928 cut of maple lumber, which was to be cut, piled, cared for, and loaded on cars by the Lumber Company. In that connection the defendant executed his negotiable notes for $11,000, for the accommodation of the Lumber Company, which it discounted at the plaintiff's bank and elsewhere, to procure funds for the purchase of logs and the operation of its sawmill. No title to the lumber was acquired by the defendant except as shipments were made to him from time to time. On November 9, 1928, the Lumber Company owed to the defendant a balance of $2,595.27, on account of his payment of those notes after crediting the Lumber Company with lumber which it delivered to the defendant and which had been shipped by him. On November 9, 1928, the Lumber Company also owed the Caroline State Bank $10,580, which had likewise been used by the Lumber Company to purchase logs and operate its sawmill. On that day the plaintiff, ignorant of the fact that the Lumber Company was then indebted to the defendant, but, on the contrary, informed by the Lumber Company that it was then a creditor of Andrews, made an additional loan of $920 to the Lumber Company, which was used to discharge an existing mortgage on its lumber, and, as security for the total indebtedness of $11,500 owing by the Lumber Company to it, was given a chattel mortgage on the Lumber Company's lumber in its yards at Marion and Caroline, Wisconsin.

The trial court found that on November 9, 1928, the Lumber Company was indebted to the defendant for $2,595.27 for advancements which he had made for that company prior to November 9, 1928; that the defendant had remitted to the plaintiff $9,751.07 under the terms of the mortgage, and that after paying some loading charges the balance of $8,987.79 was credited to the Lumber Company, leaving

that company indebted to the plaintiff for $4,321.04 as the balance of the mortgage debt at the time of the commencement of this action; that at that time the defendant had failed to account for $4,267.21 of the gross proceeds of the mortgaged lumber; and that since that time defendant had paid $1,671.94 to plaintiff, and retained for his own use $2,595.27 of those proceeds, which he refuses to pay to plaintiff. The court concluded that the plaintiff was entitled to judgment for the recovery of $2,595.27 from the defendant.

The chattel mortgage contained the following provision:

". . . That the mortgagor herein may dispose of said lumber under its contract with Andrews and shall deliver the same and that the proceeds thereof shall be made payable to the Caroline State Bank to be applied upon the notes secured by said mortgage, with the exception that out of each and every thousand of lumber sold and delivered the mortgagor herein may retain the sum of eight dollars ($8) to pay for handling charges."

On December 14, 1928, plaintiff wrote to the defendant as follows:

"This is to notify you that the Lily Lumber Company, Inc., by its proper officers, entered into an agreement with us in connection with a chattel mortgage, to have all moneys due them for lumber shipped sent direct to us, with the exception of $8 per thousand feet of lumber, which is to be retained by them to pay handling charges.

"We understand that all their lumber is shipped through you and that practically all the money they will receive will be sent to them by you. Accordingly, we will appreciate same if in the future you will mail the checks to us. We will be glad to advise their manager when checks arrive, and together make the necessary disposition of the amounts."

Ordinarily when a mortgagee of chattels authorizes the mortgagor in possession of the chattels to sell them, and a sale is made accordingly by the mortgagor as vendor, the mortgagee is held to have thereby waived his lien. *Southern Wis. Acceptance Co. v. Paull,* 192 Wis. 548, 213 N. W. 317. However, when the agreement which authorizes the mort-

gagor to sell expressly provides that the sale shall be made in the name of the mortgagee and that the proceeds shall be paid directly to the mortgagee or to some third person for the use of the mortgagee, then the lien of the mortgage follows the chattels and the proceeds to the extent that they are to be paid to the mortgagee. *Flood v. Butzbach,* 114 Mich. 613, 72 N. W. 603; *McIntyre v. Hauser,* 131 Cal. 11, 63 Pac. 69; *Hoyt v. Clemans,* 167 Iowa, 330, 149 N. W. 442; *Minneapolis T. M. Co. v. Calhoun,* 37 S. Dak. 542, 159 N. W. 127; *Brande v. Babcock H. Co.* 35 Mont. 256, 88 Pac. 949. See, also, *Salter v. Bank of Eau Claire,* 97 Wis. 84, 72 N. W. 352.

In this case the quoted terms of the mortgage and of plaintiff's letter, which authorized the Lumber Company to sell the lumber to defendant, expressly provided that the proceeds due to the Lumber Company were to be paid to plaintiff "with the exception of $8 per thousand feet of lumber." Thus the purchase price, with the exception of $8 per thousand feet, was to pass directly from defendant to plaintiff without ever coming into the possession of the Lumber Company. Excepting as to the $8 per thousand feet, the Lumber Company was not to collect or receive in any manner any part of the plaintiff's share of the proceeds. As to plaintiff's share, there was not to be any substitution of a personal promise or obligation of the Lumber Company in lieu of plaintiff's mortgaged security, and to that extent plaintiff's lien followed the proceeds. However, to the extent of the $8 per thousand feet, which were thus expressly excepted from the selling price for the use of the Lumber Company, the plaintiff never acquired—because the Lumber Company expressly retained—the rights and interest which had vested in the Lumber Company prior to the execution of the mortgage.

Applying that conclusion to the facts disclosed by the record, it appears that after November 9, 1928, the Lumber Company delivered at least 271,000 feet of lumber to the de-

fendant, on account of which, at the rate of $8 per thousand feet, it was entitled to retain and receive credit for $2,168 of the net proceeds payable by the defendant. Furthermore, it appears that in December, 1928, the defendant received from the Lumber Company two carloads of lumber, which were loaded at Lily, Wisconsin, and were not covered by the mortgage, and for which the Lumber Company was also entitled to a credit of $689.13, payable by the defendant. No lien rights in favor of plaintiff attached to any of those credits. Those credits added amount to $2,857.13, and exceed the balance of $2,595.27 which that company owed the defendant on and after November 9, 1928, and which he was entitled to have fully satisfied by applying his credit for that amount as an offset against the Lumber Company's credits for its share of proceeds of all lumber delivered to defendant after November 9, 1928. Consequently, during the course of those deliveries the defendant was enabled to completely recoup out of the Lumber Company's portion of the proceeds of deliveries, the amount which that company owed him. The conduct of all of the parties during the course of the deliveries, accounting, payments, and correspondence between them from November 9, 1928, to May, 1929, was not inconsistent with such recoupment by the defendant.

From November 9 to December 31, 1928, the Lumber Company shipped to the defendant 146,898 feet of mortgaged lumber, the net cost of which to the defendant was $6,326.08. Of that sum the Lumber Company, at the rate of $8 per thousand feet, was entitled to retain and receive credit for $1,175.18. During that period the Lumber Company also shipped the two carloads of unmortgaged lumber, on account of which it was entitled to a credit of $689.13 payable by the defendant. Consequently, up to December 31, 1928, the defendant, on account of those two credits, was indebted to the Lumber Company in the sum of $1,864.31.

On that amount the plaintiff had no lien rights, and the defendant was then entitled to have that indebtedness discharged by setting it off against the $2,595.27 which the Lumber Company still owed him. After that setoff the Lumber Company still owed a balance of $730.96 to the defendant, and there existed then no other credit which it was entitled to use to offset against that balance and thereby entirely discharge the indebtedness for $2,595.27.

Nevertheless, in a statement prepared by the defendant as of December 31, 1928, and accounting for all lumber, mortgaged and unmortgaged, which he had received from the Lumber Company up to that date, he took credit and deducted for all of his advancements for the Lumber Company's accommodation (which included the items on account of which the balances of $2,595.27 and $730.96 were owing to him on November 9, 1928, and December 31, 1928, respectively), and then, in a letter of January 11, 1929, he remitted to plaintiff $3,730.81, which he described in that letter as the "credit balance due them (the Lumber Company) on lumber shipped, as per our statement of Jan. 1st." That remittance of $3,730.81 constituted the correct balance then owing by the defendant only if he was then entitled to withhold and deduct for all indebtedness then owing to him by the Lumber Company, including the balance of $2,595.27.

Plaintiff admits receiving defendant's letter of January 11, 1929, inclosing the $3,730.81 remittance, but denies receiving the statement mentioned in that letter. However, neither then, nor until May, 1929, after the last shipments had been accepted by the defendant in March, 1929, did the plaintiff make any protest because of the deduction by defendant of the entire amount owing to him by the Lumber Company on December 31, 1928, or the insufficiency of defendant's remittance of $3,730.81 in settlement of all lumber which he had received up to December 31, 1928. Instead, plaintiff

on February 15, 1929, wrote to defendant: "Your check of $3,730.81 was credited to the Lily Lumber Company, Inc., on Jan. 15, 1929, as per agreement with the company," and requested a statement of the lumber "bought from the Lily Lumber Company, Inc., on and after November 9, 1928, to date."

Thereafter the additional shipments of 124,200 feet of mortgaged lumber entitled the Lumber Company, at $8 per thousand feet, to retain and be given credit for $993.60 out of the proceeds payable by the defendant. As that sum is in excess of the $730.96 balance which remained undischarged by credits in favor of the Lumber Company up to December 31, 1928, those later shipments enabled the defendant to obtain recoupment, as stated above, for his entire claim of $2,595.27.

Plaintiff contends that when it commenced this action the defendant was withholding the sum of $4,267.21 out of the proceeds of the lumber shipped to him by the Lumber Company. Since then, the defendant paid $1,671.94 to plaintiff, which left the sum of $2,595.27 unpaid. As the Lumber Company owed that amount to the defendant on and after November 9, 1928, and its share of the unpaid proceeds of mortgaged and unmortgaged lumber which was shipped after that date exceeded that sum of $2,595.27, the defendant was entitled to set off the entire sum of $2,595.27 owing to him by the Lumber Company in full discharge of that unpaid balance of $2,595.27 which he owed for shipments to him.

In the foregoing discussion we have not overlooked the item of $741.78 which the plaintiff paid to the Lumber Company for loading lumber, and the $136.89 which it paid for trucking logs. If out of the proceeds owing from time to time the defendant withheld in excess of the $8 per thousand feet which the Lumber Company was entitled to retain, then the plaintiff never received from Andrews any

funds belonging to the Lumber Company which were applicable to the payment of handling charges. Consequently, payments made by plaintiff to the Lumber Company for handling charges, at a time when the latter's indebtedness to the defendant—and his consequent right to setoff—exceeded the amount which the Lumber Company was entitled to receive out of the proceeds payable by Andrews, must be considered advancements by the plaintiff to the Lumber Company.

It follows that the judgment must be reversed, with directions to enter judgment dismissing the complaint with such costs in favor of plaintiff as accrued up to the time of defendant's payment of the $1,671.94, during the pendency of this action, and such costs to defendant as accrued thereafter.

As appellant has failed to print in his brief such synopsis or brief resumé of the argument as is required by rule 9 of this court, no costs are taxable for printing that brief. Rule 44.

*By the Court.*—Judgment reversed, with directions to enter judgment as indicated in this opinion.