Caroline State Bank, Respondent, vs. Radtke, imp., Appellant.

*October 12—November 7, 1933.*

112

*Matthew M. Wallrich* of Shawano, for the appellant.

For the respondent there was a brief by *Winter & Winter* of Shawano, and oral argument by *P. J. Winter.*

FAIRCHILD, J.  By the agreement in this case the signers agreed jointly and severally to guarantee the payment to respondent of all notes, drafts, and acceptances executed or indorsed by the Lily Lumber Company, Inc., "which may be owned or which may hereafter be acquired . . . or so executed or indorsed by the Lily Lumber Company," and made a sufficient guaranty effective to fix liability upon the guarantors including notes executed by the company after the date of the guaranty.  The words "so executed and indorsed," in order to have any meaning, must be read in connection with the words "hereafter be acquired" and understood to mean hereafter executed or indorsed.

The balance due on the notes of the Lily Lumber Company, Inc., which respondent is now seeking to recover from the guarantors is within the range of the guaranty agreement unless this agreement is limited to less than the amount of such notes because of the statute.  The point is made that sec. 221.29, Stats., limits liabilities to any person or corporation other than a municipal corporation to any bank for money borrowed to thirty per cent. of the amount of the capital and surplus of such bank, and that the capital and surplus of the respondent was such that the thirty per cent. would not exceed $6,500 at the time of the transactions. Under the doctrine of *Mitchell Street State Bank v. Froedtert,* 169 Wis. 120, 170 N. W. 822, had the appellant made a new guaranty at a time when the Lily Lumber Company owed the bank on these notes $8,500, he would be liable upon it even though the amount was in excess of the amount which the state banking laws sanctioned loaning to the company.  The only difference between the facts in this case and that of the *Mitchell Street State Bank Case* is that

here there was no new guaranty at the time when $8,500 was outstanding. Appellant's liability for the $8,500 is based upon the construction of the original guaranty as applying to future indebtedness. If appellant could have guaranteed the entire $8,500 when it came into existence as an obligation, there would seem to be no legal objection to his guaranteeing it prospectively, and the only question is whether as a matter of construction it can be said to have been his intention to guarantee future obligations of the Lily Lumber Company or to guarantee them only to the extent of the statutory limit. The question thus resolves itself into ascertaining the scope and coverage of the original guaranty. The evidence shows that on November 8, 1928, anxiety on the part of the respondent and appellant developed over the affairs of the Lily Lumber Company, now insolvent. Appellant, as he tells in his answer, obtained from the debtor the chattel mortgage referred to in the findings of fact. This chattel mortgage, in addition to appropriate language providing for the payment of three notes, contained the following stipulation:

"It is the express understanding of the parties hereto that this chattel mortgage is additional security for the benefit of the Caroline State Bank and does in no manner release, destroy, or waive any other provisions of the guaranty heretofore executed for the benefit of said Caroline State Bank."

This leaves the original guaranty in full force and effect. The appellant, when the original loans were made to the Lily Lumber Company by the bank, and until a short time before the giving of the chattel mortgage, had been identified with that company. And at the time of the execution of the chattel mortgage he was president of the mortgagee, the respondent here. It is manifest in the evidence that the attorney for the bank, a friend of the appellant, was anxious about the loan and fearful that the burden of paying it might fall upon appellant. Upon his advice the appellant undertook, with

the attorney's assistance, to procure additional security for the $8,500 indebtedness carried by the respondent. The lumber was available and the mortgage, as agreed upon, was conditioned to take care of a $3,000 note which was in fact a liability of the Lumber Company, as well as the note for $2,000, and the note for $6,500 executed by the Lumber Company and payable to the bank. At the time it was estimated that the lumber was of sufficient value for all needs and the arrangement was made under which the $11,500 worth of notes were to be paid. The evidence does not warrant any other conclusion than that the mortgage was to be used as additional security for the benefit of the bank, resulting, of course, in benefit to the guarantors according to the amount realized. The guaranty, it was expressly stated, was to remain in force and the chattel mortgage was supplemental thereto as additional security.

The appellant was interested, as he says, in securing this lien on the lumber, for it would ultimately tend to relieve him on his liability as guarantor. He evidently made the best bargain he could with the Lily Lumber Company, and the result was the mortgage with the provision that the $3,000 note, to which appellant particularly objects, should be included and paid out of the proceeds of the sale of the lumber, as well as the $2,000 and the $6,500 notes owing from the Lily Lumber Company to the respondent. This arrangement certainly benefited appellant, for the payments arising from the sale of the lumber after the payment of the $3,000 note considerably reduced appellant's original liability. The stipulation in respect to the mortgage being additional security "for the benefit of the Caroline State Bank," and the fact that the two notes, one for $2,000 and one for $6,500, were then in existence and were notes signed by the Lily Lumber Company payable to the bank, amounts to a practical construction of the original guaranty and creates a situation excluding the possibility of limiting the guaranty

by the appellant below $8,500. *Bradley Bank v. Pride,* 208 Wis. 134, 242 N. W. 505.

Appellant's claim to a discharge from secondary liability because of respondent's improper application of proceeds from the sale of lumber, is based on the fact that loading cost and trucking charges were paid out of moneys received from the sale of the lumber which, under the agreement, should have been paid by the Lily Lumber Company. As the transaction progressed, in order to realize on the security it was necessary to sell the lumber, load, and move the same. The appellant's familiarity with this phase of the matter is established, and it appears that in order to handle the lumber and convert it into cash it was necessary to meet these expenses. We agree with the conclusion of the trial court that these payments were in the interest of conserving the security and liquidating it in the manner contemplated by the parties when the mortgage was secured. The advancement to pay those expenses cannot properly be considered as constituting a release of the security or a diversion thereof such as would release the guarantors *pro tanto.* As has been said, appellant was the president of the bank, and continued as such until April 18, 1930. When he resigned at least $9,751.07 had been collected and applied and the $3,000 note paid and canceled.

The question raised as to the negligent management of the security acquired under the chattel mortgage is affected by much of the same evidence referred to in the foregoing paragraphs in this opinion. The questions of fact were by the trial court upon competent evidence resolved against the appellant. (Some of the facts passed upon by the trial court were under consideration in *Caroline State Bank v. Andrews,* 204 Wis. 393, 235 N. W. 794.)

That the lumber did not yield to the full extent of the original estimate is due to circumstances which cannot be

charged against the respondent. The testimony properly enough convinced the trial court that no property within the control of the respondent was applied to purposes other than those agreed upon between the parties, that no advantage was taken of appellant, and that nothing occurred that in any way deprived the respondent of the right to the proceeds of the sale of the security, and this evidence compelled the final conclusion that appellant was liable under the guaranty for the balance remaining unpaid.

*By the Court.*—Judgment affirmed.